## IDA CHESTER, ADMINISTRATRIX, &c., v. CAPE MAY REAL ESTATE COMPANY.

Submitted July 3, 1908—Decided July 21, 1909.

In an action to recover damages for the death of the plaintiff's intestate, where the fact is that the injury resulting in death was occasioned by one of two causes, for one of which the defendant is responsible, and for the other not, the plaintiff must fail if his evidence does not show that the injury was produced by the former, or if it is just as probable that it was caused by one as by the other.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and MINTURN.

For the plaintiff, *John W. Wescott.*

For the defendant, *J. Spicer Leaming* and *Gaskill & Gaskill.*

The opinion of the court was delivered by

TRENCHARD, J. This action was brought by the administratrix of Arthur S. Chester against the Cape May Real Estate Company to recover damages for his death, caused by asphyxiation while working in a sewer.

The plaintiff's intestate was working for the Etter Erecting Company. This company was constructing a sewer for Cape May City along Beach avenue, in that city. On August 13th, 1906, the day of the accident, the sewer was still unfinished and had not been turned over to the city. The work consisted of a large trunk sewer from twenty-four to thirty inches in diameter, which began at a manhole at Baltimore avenue and extended westward two thousand five hundred or three thousand feet at a depth of from fourteen to sixteen feet below the surface of the ground. The land through which the sewer extended was meadow or marsh land, which had been

filled over to a depth of four feet by sand pumped from the inlet or harbor. Three days before the accident the defendant company began the construction of a lateral house sewer which opened into the manhole of the trunk sewer at Baltimore avenue. For this purpose an opening eight inches in diameter was cut in the manhole about five or six feet below the surface of the ground into which the lateral pipe was inserted, and ditching for this lateral sewer was carried back towards the house, but the connection with the house had not been made at the time of the accident. On the day of the accident the plaintiff's intestate attempted to plug this lateral sewer from the inside of the manhole so as to prevent water flowing into the trunk sewer through this connection. Almost immediately upon entering the manhole for that purpose the plaintiff's intestate was asphyxiated with gas, and this action was brought to recover for his death.

The trial at the Cape May circuit resulted in a verdict for the plaintiff and the defendant obtained this rule to show cause why the verdict should not be set aside.

Among the reasons assigned for a new trial are the refusal of the trial judge to grant the defendant's motions to nonsuit the plaintiff and to direct a verdict for the defendant.

These motions were grounded upon the reason that the evidence failed to show that the injury resulting in the death was occasioned by negligence upon the part of the defendant.

We think the motions should have been granted.

The evidence taken at the trial tended to show that the meadows adjacent to the sewers generated hydrogen sulphite gas, and that the presence of such deadly gas in the manhole caused the death of plaintiff's intestate.

It was the contention of the plaintiff that the gas was introduced into the manhole through the inlet cut by the defendant company, which inlet it was further contended was made unlawfully.

Assuming, but not deciding, that the evidence showed that the opening was made in the manhole without authority, we are unable to find from the evidence that the opening was responsible for the presence of the gas.

It must be conceded that the plaintiff was bound to show something more than that the defendant was possibly responsible for the decedent's death in order to entitle him to a verdict. It was incumbent upon the plaintiff, in the absence of direct evidence of the fact, to show not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the death was caused by the wrongful act of the defendant, and would exclude the idea that it was due to a cause with which the defendant was unconnected. *Suburban Electric Co.* v. *Nugent,* 29 *Vroom* 658; *Stumpf* v. *Delaware, Lackawanna and Western Railroad Co.,* 47 *Id.* 153; *Houston* v. *Traphagen,* 18 *Id.* 23. And this, it seems to us, the plaintiff has not done.

The verdict for the plaintiff necessarily rests upon the theory that the gas found its way into the sewer through the lateral pipe introduced into the manhole by the defendant, through which some muddy water was flowing at the time of the accident. But we think, as the defendant contended, that the evidence demonstrated that it was at least equally probable that the gas came from the open "working end" of the main trunk sewer, which rested in a ditch sixteen feet deep, which ditch was at the time or shortly before the accident filled with water by reason of rainfall and temporary stoppage of pumping. It was made to appear at the trial that an effort was made to keep what is known as the "working end" or both sewers closed when not laying pipe, but the evidence indicates that the closing was so imperfect in both cases that both gas and water, if present, would not be prevented from entering the sewers. The evidence also shows that the gas in question is heavier than air and was always present in the ditch at the "working end" of the main sewer, and sometimes in the sewer itself; that the gas does not rise, but moves along the level under pressure from wind, water or the like. As we have pointed out, the main sewer was from twenty-four to thirty inches in diameter and its "working end" was at the bottom of a long ditch sixteen feet deep, and by reason of the water the gas there is certainly shown to have been under heavy pressure, while, on the other hand,

the lateral sewer was but eight inches in diameter and its "working end" was at the bottom of a ditch only from three to five feet deep. When it is remembered that the meadow proper, which is said to have generated the gas, was four feet beneath the surface of the ground, it will be seen that it is at least equally probable that the gas in question came from the ditch at the "working end" of the main sewer as that it came from the "working end" of the lateral sewer.

We think, therefore, that the jury could have attributed the presence of the gas which killed the plaintiff's intestate to other causes with quite as much reason as they have attributed it to the act of the defendant. The circumstances would warrant the former inference quite as clearly as the latter. The case is one, we think, where it appears that the primary cause of the injury proceeded from one of two sources, or was produced by one of two agencies, for one of which the defendant might be responsible, but not for the latter. The plaintiff must fail because the evidence does not show that the injury was the result of some cause for which the defendant was responsible. *Stumpf* v. *Delaware, Lackawanna and Western Railroad Co.*, *supra;* *Searles* v. *Manhattan Railway Co.*, 101 *N. Y.* 661; *Ruppert* v. *Brooklyn Heights Railroad Co.*, 154 *Id.* 90.

The rule to show cause will be made absolute.