DuPONT RAYON COMPANY, Plaintiff in Error, v. J. H. ROBER-SON, Administrator, Defendant in Error.

Middle Section. August 30, 1930.

Tyne, Peebles, Henry & Tyne, all of Nashville, for plaintiff in error, DuPont Rayon Co.

Bond, Fuqua & Bond and Lewis C. Payne, all of Nashville, for defendant in error, Admr.

CROWNOVER, J. This was an action for damages brought by J. H. Roberson, administrator, for the death of his minor son, William Otis Roberson, who was drowned in a public swimming pool in the town of Old Hickory, against the owner of the pool, the DuPont Rayon Company, successor to the DuPont Fiber Silk Company, and Dr. A. S. Keim, who was operating the pool under a contract with the said companies.

The declaration contained two counts: The first count averred that defendants negligently constructed, maintained and operated said pool, located in the heart of the town, leaving the same unlocked and unguarded, and inadequately fenced, and negligently allowed said fence to remain in bad state of repair with large holes in and under it, with full knowledge that small children played around the pool and were likely to fall into the same; that on or about September 1, 1926, plaintiff's decedent, a child of five years of age, who lived in a thickly settled neighborhood surrounding and near to the pool, in company with one of his playmates, went to the pool, in the afternoon at about two o'clock, and finding the stile at the entrance and the gate to the pool unlocked, and attracted by the pool and its surroundings, wandered into said pool and was drowned.

The second count averred that the defendants constructed and operated the pool as aforesaid in such a manner as to cause it to be an attractive place to children, with full knowledge that small children were in the habit of playing around and near the pool, and expressly and impliedly invited persons to it, it being a public place of amusement; that said pool was provided with spring-boards, floats, striped balls, painted barrel and places for diving; that in addition defendants permitted pennies and nickels to be thrown into the water, which could be plainly seen on the bottom, and that they knew or were bound to know that this would be an additional attraction to children; that they sold cold drinks and candy inside the entrance to the pool; and they so constructed said pool and appliances used therewith and so negligently operated it as to make it an unusually attractive place for children, and negligently left it unguarded and the entrance gates unlocked, with the result that plaintiff's intestate, a young child under the age of five years, attracted thereto, wandered inside the fence, not appreciating the danger, fell into the water and was

drowned; that the negligent manner of the maintenance and operation of the pool by defendants created an attractive nuisance, which was the direct and proximate cause of his death.

The defendants pleaded the general issue of not guilty.

The case was tried by the judge and a jury. At the close of plaintiff's evidence and again at the conclusion of all of the evidence the defendants, the DuPont Rayon Company and the DuPont Fiber Silk Company, moved the court for a directed verdict, which motions were overruled. At the conclusion of the evidence the defendant, Dr. A. S. Keim, moved the court for a directed verdict, which motion was overruled.

The jury returned a verdict in favor of the plaintiff and against the defendant companies for $10,000, but found in favor of the defendant, Dr. A. S. Keim.

The defendant companies moved the court for a new trial. The court sustained said motion as to the DuPont Fiber Silk Co. and dismissed the suit as to it, but overruled the motion for a new trial as to the DuPont Rayon Company. It appealed in error to this court and has assigned twenty-six errors, which, when summarized, raise six propositions:

(1) That there was no evidence to sustain a verdict, and the court erred in not directing a verdict for the defendant.

(2) That the pool was not an attractive nuisance.

(3) That the DuPont Rayon Company is not liable because it did not create the attractive nuisance or operate the pool, and if it were an attractive nuisance, it was created by Dr. A. S. Keim.

(4) That defendant is not liable, because the intestate's parents were guilty of contributory negligence in permitting him to run at large.

(5) That the court erred in admitting testimony of the witnesses Deitrick and Derrick as to the state of repair of the fence and as to the condition of the surroundings of the pool in 1927, one year after the accident.

(6) The verdict was excessive.

The facts necessary to be stated are that the little five year old boy, William Otis Roberson, was, on September 1, 1926, drowned in the swimming pool owned by the defendant, the DuPont Rayon Company, but leased to and operated by Dr. A. S. Keim.

The Dupont Rayon Company, a Delaware corporation domesticated in Tennessee, has a large manufacturing plant located in Davidson county, near Nashville, Tennessee. Adjacent to the plant the company had laid out a town, built streets, residences, stores and other improvements necessary for the accommodation of a town of probably five thousand inhabitants. The residences are rented chiefly to employees of the defendant company's plant. It is an unincorporated

town known by the name of Old Hickory, and is the property of the DuPont Rayon Co. Said company maintains a police department and fire department, and manages and governs said town and the properties therein located. It also maintains places of amusement and recreation, including a swimming pool, for the members of its community.

On Fourteenth street the Y. M. C. A. building had formerly been located but was destroyed by fire. There had been a park around the building with swings and other things for amusement and recreation, which place was much frequented by children. After the building was burned, children continued to use this lot as a playground, of which the defendant had knowledge. On a part of this lot and immediately adjoining this playground was made a swimming pool, in which plaintiff's intestate was drowned, for which this action was brought.

The swimming pool had been built during the World War by the residents of the village of Old Hickory while the village was owned by the United States Government during the building and operation of the powder plant. The pool is surrounded by a wire fence four feet high. The entrance to the ticket office is through a turnstile, and then the entrance to the pool of water is by means of double swinging gates, easily pushed open. There is a board walk four feet wide around the pool inside the fence, and there are benches just outside of the fence for spectators. Children could easily crawl under the turnstile, and the double gates to the pool were usually but not always locked. There were patches in the wire fence where it had been repeatedly repaired. It appears that this fine mesh wire fence had been erected about eight or nine years prior to the time of the accident, and holes in it were often found by the DuPont repair department.

The pool is located in almost the center of the city with residences all around it. The DuPont Rayon Company has built a cinder path or walk across lots and near the pool. This path is one of the most traveled roads in that community, as it is the shortest distance from the residence section to the business part of town. Children use it going to school, and most of the population use it going to the main concrete boulevard.

In June, 1926, the DuPont Rayon Company entered into a contract with Dr. A. S. Keim for the operation of the pool as a swimming pool, which written contract is as follows:

"June 22, 1926.

"This agreement entered into this 28th day of June, 1926, between DuPont Rayon Company of Old Hickory, Tennessee, of the first part, and Dr. A. S. Keim of Nashville, Tennessee of the second part, witnesseth:

"That for and in consideration of the sum of $75 per month, the said DuPont Rayon Company agrees to lease the said Dr. A. S. Keim, the swimming pool located on 14th street of Old Hickory, Tennessee. The said rent to be paid at the end of each month after the beginning of the operation of the pool which shall not be later than June 15th of this year.

"The party of the first part agrees to furnish sufficient water to fill tank once in every forty-eight hours and oftener if found to be necessary, except in the event of an extreme drought which would effect the supply of water to the village, and then the party of the first part will not be held responsible for furnishing the water until said trouble has been corrected.

"The party of the first part agrees to do all necessary repairs to the pool such as painting and carpenter work, and to put same in good sanitary condition for the opening.

"The party of the first part agrees to furnish necessary police protection and to furnish a guard on special occasions such as racing exhibitions, and render any reasonable assistance to management in conducting the pool in an orderly manner.

"The party of the first part agrees to grant the party of the second part concessions to sell ice cream, soft drinks, candy, etc.

"The party of the second part agrees to open pool to the public not later than June 15th, and under capable management, and will conduct same in an orderly manner.

"The party of the second part agrees to assume full responsibility for the purification of the water in the pool, and to have daily tests made of the water by the State Board of Health, as long as it is deemed necessary, and then at necessary intervals to be assured of the proper condition of the water. A copy of all reports to be furnished the service department of the DuPont Rayon Co. The party of the second part further agrees to assume responsibility for any contagion that may result from the use of the water in the pool, and for any injury sustained by any of the patrons while in bathing.

"The party of the second part further agrees that the pool will be conducted in such a manner as to conform to the requirements of the State Board of Health of the State of Tennessee in every particular.

"The party of the second part agrees that the maximum charge to ones who furnish their suits will be twenty cents for adults and ten cents for children and twenty-five cents for retail of suits.

"(Signed) J. R. Haymes,
"DuPont Rayon Company.
"(Signed) A. S. Keim."

At the time of making this contract Dr. Keim and Mr. Hymes, village supervisor for the DuPont Rayon Company, had a verbal understanding that the company would keep the pool in repair during the life of the contract, which was for the season of 1926. Dr. Keim states that they so interpreted the written contract that the repairs called for in the written contract meant the keeping up of all the repairs during the entire swimming season. Repairs were made by the company throughout that season whenever requested by Dr. Keim and his employees or whenever the employees of the DuPont Rayon Co. noticed they were needed.

Reports on samples of water in the pool from the State Bacteriologist were sent to Mr. Hymes.

Hymes agreed to have the police department prevent the throwing of trash into the pool when the same was not open. It was understood between them that the pool would be open to the public at certain hours of the afternoon and night, at which time it would be visited by the public, and would be closed the rest of the time. When the incident of throwing trash into the pool occurred, Hymes agreed verbally with Dr. Keim that the company would patrol the pool during the hours it was closed.

Prior to June 15th, 1926, and before delivery of the pool to Dr. Keim, the DuPont Rayon Company inspected and repaired the fence and the buildings about the pool in accordance with the written contract and delivered the same to him in good state of repair.

Dr. Keim proceeded to operate the pool, and during the time the pool was open to the public he furnished a lifeguard for the protection of the bathers in the pool. He furnished and placed in the pool for the entertainment of those coming to the pool striped rubber balls, inflated inner tubes and a painted barrel. These are the customary attractions at public swimming pools and their presence in the pool was known to all the village and to the defendants. When the pool was open Dr. Keim's attendants sold cold drinks and candy, and visitors threw pennies into the water for which the boys dived. This was known to the defendant Rayon Company and they did not object. Before the pool was open for the afternoon small boys used to go there and try to locate the money lying on the bottom of the pool so they could attempt to get it when the pool was opened.

Small boys were continually playing around and inside the fence of the pool at the hours when it was closed to the public. The fire chief of the DuPont Rayon Company said that he had run them out of there thousands of times and had been instructed by the DuPont Rayon Company to run them out.

J. H. Roberson, the father of deceased, was an employee of the DuPont Rayon Company and resided in Old Hickory and rented one of the company's houses. He lived on Birdsall street, and the swim-

ming pool was across some vacant lots 324 feet away in plain view. There was no fence around the yard or house occupied by him. Roberson had two small boys, one aged seven, and the other, William Otis Roberson, aged four years and eight months. The mother, Mrs. Roberson, in order to pay some debts, clerked in her father's store in Old Hickory, and these boys were attended by a nurse. She and her husband secured the best nurse they were able to find in the village to look after and care for the children. The nurse employed was a responsible white woman, accustomed to caring for children, and had the reputation of paying attention to the children she nursed.

On September 1, 1926, at about two o'clock in the afternoon, the nurse dressed the little boy, William Otis, for the afternoon. She then began to brush her own hair and turned to the mirror and lost sight of the little boy. In a few minutes she heard cries from the swimming pool and heard that the little boy was drowned. He and another small companion had gone to the swimming pool. He in some manner not shown went through or over the fence or through the gate and fell into the water. It is not shown whether the gate was locked on this occasion.

J. H. Roberson was appointed administrator of the deceased and brought this action for the use and benefit of the next of kin.

1. The first proposition, that there was no evidence to sustain a verdict and that the court erred in not directing a verdict for the defendant company, is well taken and must be sustained, because there is no proof as to how the deceased gained entrance to the pool.

The view taken by the trial court, that the operation of the pool was a joint undertaking and a joint liability on the part of Dr. Keim and the DuPont Rayon Company, is not sustained by the record.

Under our construction of the contract it was clearly a lease contract and not a contract of partnership. The property was leased by the company to Dr. Keim for $75 per month for the swimming season of 1926, and possession and control of the pool were given to him, and the fact that the lessee's use was limited and that the company was to do certain things such as supply and remove the water and keep the premises in repair did not change the relation of landlord and tenant. Dr. Keim testified that it was a lease and that they were not partners. A partnership is always created by a voluntary agreement of the parties and not by operation of law. Hackney Co. v. Lee Hotel, 156 Tenn., 243, 300 S. W., 1.

We are of the opinion that, under the facts of this case, the pool was made an attractive nuisance by Dr. Keim after he had leased it, which will be more fully hereinafter discussed, and that it was in good state of repair when the possession was delivered to him.

Where the landlord creates a nuisance he cannot avoid liability by renting out the property, but if it is not a nuisance at the time it is

rented, and the use of it is not a nuisance per se, and a nuisance is created by an improper use of it by the lessee, then the lessee alone is liable. Terminal Co. v. Jacobs, 109 Tenn., 727, 72 S. W., 954; Shearman & Redfield on Negligence (6 Ed.), sec. 709a; Taylor on Landlord & Tenant, sec. 175.

The landlord is not liable "where the structure or work, whatever it may be, is not of itself a nuisance, and where the letting was general in its character. In such case, if the use of such structure or work does not ex necessitate make a nuisance, but after the letting it is used by the tenant so as to create one, then the tenant alone should be liable." Terminal Co. v. Jacobs, supra.

The landlord is not liable for the leasing of a pool for public bathing purposes where possession is delivered with the agreement that the lessee will make such improvements as are necessary for the proper use of the pool, or where the pool is delivered in proper state of repair, as the landlord has a right to assume that the lessee will properly operate it. Beaman v. Grooms, 138 Tenn., 320, 197 S. W., 1090, L. R. A., 1918B, 305.

Usually, the tenant only may be held liable to third persons for accidents growing out of the dangerous condition of the leased premises. But there are three exceptions: (1) Where the landlord has contracted to repair, (2) Where he lets the premises in a ruinous or dangerous condition, and (3) Where he has expressly licensed the tenant to do acts amounting to a nuisance. Woodfall's Landlord & Tenant (13 Ed.), 735; Shearman & Redfield on Negligence (6 Ed.), 709a; Stenberg v. Wilcox, 96 Tenn., 163, 172, 33 S. W., 917.

This pool was in a good state of repair, and was in no sense an attractive nuisance when it was leased to the defendant, Dr. Keim, and it could have been operated by him without placing the attractive things in the pool which made it an attractive nuisance. There is no proof that the company contemplated that he would, or licensed him to make it an attractive nuisance, hence the company is not liable on account of letting the premises in a bad state of repair, or in a dangerous condition, or because it licensed him to create the attractive nuisance, but it is liable, if at all, under the agreement to keep the premises in proper state of repair after it had knowledge that the pool had been made an attractive nuisance.

A landlord is liable to third parties where he covenants to repair; provided he is given notice, Wilcox v. Hines, 100 Tenn., 538, 46 S. W., 297; Shearman & Redfield on Negligence (6 Ed.), sec. 708a, or has knowledge of the defects. 1 Thompson on Negligence, 1150; Elliott on Railroads (3 Ed.), secs. 1673 and 1700; 43 C. J., 1040, 1054.

Dr. Keim testified that they had a parol agreement that the company was to do all of the repairs on the pool and premises during the season and that this was the construction that he and Mr. Hymes put upon the contract.

Parol evidence is admissible to prove an independent agreement collateral to a written contract, provided it does not vary or contradict the terms of the written contract. Hines v. Wilcox, 96 Tenn., 148, 33 S. W., 914; Litterer v. Wright, 151 Tenn., 210, 268 S. W., 624.

The construction placed upon the contract by the parties themselves furnishes strong evidence of the intention of the parties. Board of Education of Viola Normal School v. Board of Education of Warren County, 160 Tenn., 351, 24 S. W. (2d), 889; Villines v. Parham-Lindsay Groc. Co., 6 Tenn. App., 254; Pigg v. Houston & Liggett, 8 Tenn. App., 633.

Hence the DuPont Rayon Company would be liable for damages under its agreement to repair, if its negligence in failing to repair the fence or in failing to provide a sufficient fence after it had notice that the pool was an attractive nuisance was the proximate cause of the child's death; but it would not be liable for the negligence of Dr. Keim in failing to keep the gates locked when the pool was not in use, as that was not any part of its duty under the agreement.

But, as above stated, there is no proof as to whether the child gained entrance to the pool through a hole in the fence or went over the fence or through the unlocked gates. There is some contention that the child went through a hole in the fence for the reason that there had been holes in the fence which had been repeatedly repaired, but there is no proof that there was a hole in the fence on the day that the child was drowned. The proof is that holes in the fence had been repaired during the month of August, but no one seems to have paid any attention to or observed that there was any hole in the fence at the time the child was drowned, but one witness does testify that he examined the fence on the next day and there were no holes in the fence and there was no evidence of recent repairs.

Evidence of the condition of the premises on the next day after the accident is admissible if the conditions are unchanged. Rosenbaum v. Shoffner, 98 Tenn., 623, 629, 40 S. W., 1086; 21 Am. & Eng. Ency. of Law, 517.

The DuPont Rayon Company is not liable for negligence in repairing the fence or in not providing a fence of sufficient height to protect the pool, if the child went through the turn-stile and unlocked gates, as its negligence in that respect would not be the proximate cause of the child's death. 1 Thompson on Negligence, sec. 974.

"In order to recover it is not sufficient to prove merely the existence of negligence and a resulting injury, but plaintiff must prove also that defendant was in some way connected with, or responsible for. the acts so as to make him liable therefor. Where the injury may have resulted from one of several causes and defendant is liable for only one or more of them, but not for all, plaintiff must prove that a cause for which defendant is liable

produced the result." 45 C. J., 1167, sec. 751; 21 Am. & Eng. Ency. of Law (2 Ed.), 496; Ry. & Lt. Co. v. Harrison, 5 Tenn. App., 32.

"Where death may have resulted from either of two causes, for one of which defendant would be liable, and for the other not liable, plaintiff must show with a reasonable certainty that the cause for which defendant is liable produced the result." 17 C. J., 1304, sec. 166; 8 R. C. L., 742, sec. 36; DuPont de Nemours Powder Co. v. DuBoise, 236 Fed., 690; Ry. & Lt. Co. v. Henson, 5 Higgins, 578; Chester v. Cape May Real Estate Co., 78 N. J. L., 131, 73 Atl., 836, 138 Am. St. Rep., 614.

"It must be conceded that the plaintiff was bound to show something more than that the defendant was possibly responsible for the decedent's death in order to entitle him to a verdict. It was incumbent upon the plaintiff, in the absence of direct evidence of the fact, to show not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the death was caused by the wrongful act of the defendant, and would exclude the idea that it was due to a cause with which the defendant was unconnected. Suburban Electric Co. v. Nugent, 58 N. J. L., 658, 34 Atl., 1069, 32 L. R. A., 700; Stumpf v. Delaware, etc., R. R. Co., 76 N. J. L., 153, 69 Atl., 207." Chester v. Cape May Real Estate Co., supra.

Where the deceased may have gained entrance to the pool in one of three ways, for some of which the defendant is responsible, and for one of which it is not, it is not for the jury to guess between the different possible ways and find that it was due to the negligence of the defendant, when there is no foundation in the evidence for that conclusion. The plaintiff has the burden of proving the negligence charged against the defendant company. It is an affirmative fact for the plaintiff to establish that the party sought to be charged with liability has been guilty of negligence. DuPont v. DuBoise, supra.

There is nothing in the contention that the Rayon Co. was to guard the pool when closed. The company agreed to patrol it, but there is a vast difference between patrolling and guarding it. To guard would require extraordinary care, whereas ordinary care is all that is required. 45 C. J., 783, Note 3; Brown v. Rockwell City Canning Co., 132 Iowa, 631, 110 N. W., 12.

All the assignments of error on the first proposition, to the effect that there was no evidence to show that the negligence of the defendant company was the proximate cause of the injury, are sustained, and we hold that the court should have directed a verdict for the defendant.

But all the other assignments of error under the first proposition for a directed verdict, to the effect that the defendant company is not

liable because it was not guilty of negligence, that the pool was not an attractive nuisance and the attractive nuisance was not created by defendant company, that the parents of deceased were guilty of contributory negligence in letting the child run at large, are overruled.

2. It is insisted on the second proposition that the pool was not an attractive nuisance, because it contained no hidden peril and was surrounded by a heavy wire fence and contained a sign in plain view warning people to stay out of the pool except when an attendant was on duty, and that the little boy was warned and admonished by his father to stay away from the pool, and under these facts the little boy was a trespasser at the time of the accident and there can be no recovery.

After a careful review of the record and the authorities we are of the opinion that this contention is not well made and all of the assignments of error going to this proposition must be overruled.

It is the general rule that a trespasser who invades the premises of another must look out for his own protection, and no duty rests upon the owner to keep his property in such condition or so guarded that a wrongful intermeddler shall not be exposed to danger; but in as much as children are less able to foresee and appreciate danger than are persons of mature years and intelligence, it is generally recognized that they are entitled to a greater degree of care than adults. In Tennessee and in several other jurisdictions this doctrine has been designated as the ''attractive nuisance'' or the ''turn-table doctrine.'' These decisions establish that while a proprietor may owe no duty to adults with respect to instrumentalities maintained by him, he may be liable to a child of tender years for injuries sustained from said instrumentalities. 20 R. C. L., 79, sec. 70. This doctrine imposes liability for injuries to children, even though they are technical trespassers, where such injuries are the result of the failure of the owner or person in charge to take proper precautions to prevent injuries to children by instrumentalities or conditions which he should, in the exercise of ordinary judgment and prudence, know would naturally attract them into unsuspected danger. 45 C. J., 758. The doctrine originated in the English case of Lynch v. Nurdin, 1 Q. B. 29, 41 E. C. L., 422, 113 Reprint 1041, decided in 1841, in which one who left a horse and cart unguarded on the street was held liable for an injury received by a child seven years of age while playing on the cart, but since then the doctrine has been extended far beyond the strict legal principles involved in that case. In the United States the doctrine was first designated as the ''turn-table doctrine,'' because the leading American case on the subject, in which the doctrine was first recognized by the Supreme Court of the United States, in 1873, in the case of Sioux City, etc., R. R. Co. v. Stout, 17 Wall., 657, 21 L. Ed., 745, involved an injury to a child playing about a railroad turn-table.

But this doctrine was recognized by the Supreme Court of Tennessee in the case of Whirley v. Whiteman, 1 Head, 609, in the year 1858, wherein the principle was definitely established that one was liable for damages to a child of tender years who was injured by the exposed cog-wheels of his manufacturing plant, while trespassing upon the defendant's property, and the case of Lynch v. Nurdin, supra, was cited with approval.

"It is frequently stated that a reason for the attractive nuisance rule is that the condition or appliance in question, although its danger is apparent to those who have reached years of discretion, is so enticing or alluring to children of tender years as to induce them to approach, get upon, or use it, and that this attractiveness amounts to an implied invitation to such children. According to this view, children who are thus induced to enter upon the premises or use the dangerous instrumentality do not become trespassers, and the owner or person in charge owes to them, the same as to other invitees, the duty to exercise ordinary care to render the premises reasonably safe for them, and ordinary care in such circumstances can be exercised only by taking into consideration the propensities of the children who play there, the ability of such children to appreciate the danger, and their power to avoid it." 45 C. J., 760-1.

Another reason given is that the thing being of a nature to attract children of tender years, the owner of, or the person maintaining, the same, is under a duty of anticipating that such children will be attracted to the place and be injured as the result of so doing, and is therefore under a duty of guarding against the danger which they may encounter. If he knows of the danger, or in the exercise of reasonable care should have known of the condition causing the injury, liability will be predicated upon his failure to provide safeguards. 45 C. J., 761-2.

In Thompson on Negligence, sec. 1030, it is said that:

"The decisions which hold the landowner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come with or without license, proceed on one or the other of two grounds: 1. That where the owner or occupier of grounds brings or artificially creates something thereon which from its nature is especially attractive to children, and which at the same time is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. 2. That, although the dangerous thing may not be what is termed an 'attractive nuisance,'—that is to say, may not have an especial

attraction for children by reason of their childish instincts,— yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them.''

It was said by our Supreme Court in the case of Cooper v. Overton, 102 Tenn., 210, 52 S. W., 183, that liability does not exist even in the case of children, unless they are induced to enter upon the land by something unusual and attractive placed upon it by the owner, or with his knowledge permitted to remain there.

The Court of Appeals said, in the case of Kelley v. Tennessee Electric Power Co., 7 Tenn. App., 555:

''Infants have no greater right to go upon other people's land than adults, but an attractive instrumentality may in reality in law be an invitation to an infant to come upon the land and in such an instance the landowner is required to use the degree of care due an invitee.''

It is almost universally held that a natural pond, or an artificial one, without more, is not an attractive nuisance. 45 C. J., 779; 20 R. C. L., 96, sec. 85. But on the other hand it has been held in a number of cases that pools, ponds, lakes and reservoirs may be made attractive nuisances and may possess the attractive and dangerous qualities which will bring them within the rule. 45 C. J., 780.

In the case at bar the thing that attracted the child was in a public park where young children were accustomed to play, which fact was well known to the owners and operators of the pool. This lot where the Y. M. C. A. building had formerly been located, although belonging to the DuPont Rayon Company, had been used as a public park by that village for a number of years and the deceased and the other children were not trespassers on the lot. While in this park as an invitee or licensee, the deceased was attracted to something in the pool and trespassed on the pool. The child plainly was not going swimming. There is no evidence to show that he contemplated it. But it appears that he was attracted by something in the pool, went in and fell into the water. The jury evidently took this view of it. There was evidence that pennies and nickels were thrown into the water and the children went in when the pool was closed to try to locate them; that they went into the pool to get soft drink bottle stoppers to play with; and sometimes found money under the platform. When the pool was open, attractive floats, striped balls, inflated tubes and a painted barrel were put into the water, and some of these things were left in the water when the pool was closed

They also sold cold drinks and candy. All of these things went to make up things very attractive to little children, and following childish instincts it is but natural that a child should resort to places where such attractions were kept, hence it was the duty of the owner of the property to use, such safeguards as to prevent children of tender age from entering such premises.

From a review of all the cases we are of the opinion that when premises are made so attractive as to lure young children regardless of danger, the child when trespassing may be considered an invitee, or if the dangerous instrumentality is located in a street or other place where the child has a right to be it is an attractive nuisance and the proprietor is liable in damages for injuries.

There are three cases in Tennessee where children were drowned in artificial ponds and suits were brought on the ground that such ponds were attractive nuisances.

In the case of Cooper v. Overton, 102 Tenn., 210, 52 S. W., 183, the pond was on private property near a street frequented by children, and a path led across the lot which was used by children going to school. The lower end of the ravine or sag was used as a dump by the city and was filled in so that water collected, and a boy in attempting to get on a floating plank or board fell into the pool and was drowned. The court, without deciding whether the pond was an attractive nuisance, held that the proof failed to show that the owner or his agents did anything to render the pond attractive or that they placed any planks upon it, and that the owner did not know of the existence of the pond hence he was not liable.

In the case of Doyle v. Chattanooga, 128 Tennessee, 433, 161 S. W., 997, two children were drowned in a pond in the street, and the court held that the city was liable because the children were not trespassers in the street and had a right to be in the street when they fell into the pond.

The case of Benson v. Brick Co., 6 Higgins, 497, was where a boy was drowned while swimming in a pool made by the excavation of dirt for the purpose of making brick. The excavation was near the river and when the river arose the excavation was filled with water. The court held that there was no liability because the pond was in a remote section from the highway and on the banks of the river and there was nothing more than the water to attract the child. This case reviewed a great number of cases where children were drowned in ponds or streams on private property and reached the conclusion that the defendant was not liable.

But in the case at bar the pool was intentionally made attractive to the public and things were placed therein which rendered it especially attractive to young children. It has been held that a child must be attracted to the place by the thing that injures him or there will

be no liability. R. R. v. Ray, 124 Tenn., 16, 134 S. W., 858; Kelley v. Tenn. Elec. Power Co., supra.

There may not be any liability where the child goes into a pool to swim and is drowned, where the pool is not an attractive nuisance, but there is liability where the injury results from some dangerous element which is a part of, or inseparably connected with, the alluring thing or device. 45 C. J., 784, sec. 187.

It is strongly urged by the defendant company that the doctrine of attractive nuisance does not apply unless there is a latent danger. It has been considered by several courts that the attractive nuisance doctrine applies only where the danger is latent and not where it is patent. 45 C. J., 765, sec. 162. But this is not the rule in Tennessee, and there may be liability although the danger is patent. Whirley v. Whiteman, 1 Head, 609; Burke v. Ellis, 105 Tenn., 701, 708, 58 S. W., 855. It will be observed that Judge Hall in the case of Benson v. Brick Co., supra, elided those parts of all the opinions of other courts quoted which referred to latent danger.

*No such statement* [handwritten margin note]

It is strongly urged that the deceased was a trespasser and therefore the attractive nuisance doctrine did not apply, and a great many of the cases cited by defendant are decisions from other states that do not recognize the attractive nuisance doctrine, as does the State of Tennessee, that hold the child in such a case to be a trespasser. But in Tennessee it has always been held that the fact that a child was trespassing when it was injured does not preclude recovery. Whirley v. Whiteman, supra; R. R. v. Cargile, 105 Tenn., 628, 59 S. W., 141; Burke v. Ellis, supra.

There is nothing in any of these controversies and we hold that the pool was an attractive nuisance, and all assignments of errors on this proposition must be overruled.

3. It is insisted by the DuPont Rayon Company that if the maintenance and operation of the pool at the time of the accident was so negligent as to constitute a nuisance attractive to children, whereby plaintiff's intestate was attracted thereto and met his death, it was rendered such a nuisance because of its manner and mode of operation by the defendant, Dr. Keim, with which the defendant, DuPont Rayon Company, had nothing whatever to do, and therefore liability for the injuries and death of the plaintiff's intestate rested upon the defendant Keim and not upon the defendant DuPont Rayon Company. This contention is not well made, for the reasons set out by us under the first proposition. The company would be liable under its contract for its negligence in not properly repairing or maintaining the fence to safeguard the pool, if such negligence was the proximate cause of the injury. Hence, all assignments of errors on this proposition must be overruled.

4. It is insisted by the DuPont Rayon Company that it is not liable because the intestate's parents were guilty of contributory negligence in permitting the child to run at large. This contention is not well made, because there was proof that the nurse employed was careful, had a good reputation for attending to children and used ordinary care and diligence in looking after the child. This proposition was submitted to the jury under a correct charge of the court and the jury found the issue in favor of the plaintiff. Hence all assignments of error on this proposition must be overruled. See opinion of this court in the case of Taylor v. L. C. Roberson, Admr., Dickson County Law, filed July 26, 1930, 12 Tenn. App., 320. The special request for a charge on this proposition was properly refused, because the request asked for peremptory instructions in favor of the defendant on this proposition.

5. It is contended that the court erred in admitting the testimony of Deitrick and Derrick as to the state of repair of the fence and the condition of the surroundings of the pool in the year 1927, one year after the accident. Testimony on these matters one year after the accident is incompetent unless it is shown that the conditions testified to remained unchanged from the date of the occurrence up through 1927. This was not shown, and the court erred in admitting this testimony. 21 Am. & Eng. Ency. of Law (2 Ed.), 517; R. R. v. Lindamood, 109 Tenn., 407, 74 S. W., 112. It results that all the assignments of errors on this proposition must be sustained.

6. The last proposition is that the verdict is excessive. After an examination of the record we are of the opinion that this assignment of error is not well made and should be overruled. The child was intelligent and in good health and had a long expectancy, hence the verdict was not too large; however this proposition has become immaterial.

The assignments of errors on the first proposition having been sustained, the judgment of the lower court must be reversed and the action dismissed. The cost of the cause including the cost of the appeal is adjudged against the administrator, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.