COMMERCIAL CLUB et al., Plaintiff in Error, v. MRS. LULA B. EPPERSON, Defendant in Error.

Middle Section.   October 1, 1932.

Petition for Certiorari denied by Supreme Court, Mach 18, 1933.

Roberts & Roberts and Walter Stokes, all of Nashville, for plaintiffs in error, Commercial Club et al.

Bass, Berry & Sims, of Nashville, and Dancey Fort, of Clarksville, for defendant in error, Mrs. Epperson.

CROWNOVER, J. This cause is now before us for hearing on its merits.

This was an action for damages for personal injuries sustained by Mrs. Epperson as a result of slipping and falling while walking across a waxed hardwood floor of the Chamber of Commerce building. The action was brought against the Commercial Club Corporation, operating and carrying on its business under the name of Nashville Chamber of Commerce.

In her declaration Mrs. Epperson averred that the said defendant was, on August 24, 1926, operating and leasing to various tenants a public office building, known as the Chamber of Commerce Building, on Fourth Avenue, in Nashville; that on said date she had gone there to call upon one of said tenants for the purpose of purchasing blankets; and that the defendant carelessly, recklessly and negligently maintained the floor of the hall of the fourth floor in a dangerous condition, in that, it was so highly polished, slick and slippery that it

was unsafe to go or walk upon; and that on account of such negligence of the defendant she slipped and fell, breaking her hip and otherwise injuring herself. The second count, in addition to averring that the floor was maintained in a dangerous condition, averred that the defendant employed incompetent agents to polish said floor; that it was polished in such a careless and negligent manner as to make it dangerous, and that the material used in such polishing was so unfit as to make said floor dangerous for those who walked upon it.

Defendant pleaded the general issue of not guilty.

The case was tried by the judge and a jury. At the close of plaintiff's proof and again at the conclusion of all the proof defendant moved the court for peremptory instructions, which motions were by the court overruled. The jury returned a verdict of $6000 in favor of Mrs. Epperson.

Motion for a new trial having been overruled, defendant has appealed in error to this court and has assigned twenty-five errors, which are, in substance, as follows:

(1) The court erred in not directing a verdict for the defendant for the reason that there was no evidence of negligence to support a verdict, in that, (a) the plaintiff had sued the wrong party, as the building was in the possession of a subtenant and was being operated by another corporation at the time of the accident, and (b) it was not actionable negligence to maintain a waxed floor in a public building.

(2) The court erred in admitting evidence that the floors were unevenly waxed, slick and slippery, and were the slickest floors the witnesses had ever seen, and that other people had fallen on the other floors of the same building before this accident.

(3) The court erred in admitting evidence over objection that defendant had failed to provide rugs and runners across the floor. This ground of negligence was not averred in the declaration and the admission of this testimony amounted to a variance.

(4) The plaintiff was guilty of contributory negligence and assumed the risk of obvious danger, which barred a recovery.

(5) The court erred in not charging defendant's special requests on these propositions.

(6) The court erred in charging the jury that if the floor was kept and maintained in an unsafe condition, known to defendant, or could have been known by the exercise of ordinary care, and as a result an invitee is injured, then defendant is liable; and, evidence that others had fallen on the fourth floor, when the conditions were similar, might be considered in determining whether the floor was kept and maintained in a negligent condition, and to show knowledge of its condition.

(7) The court erred in admitting a copy of the charter of the

Commercial Club of Nashville for only one purpose, that is, to prove the fact of its corporate existence.

(8) The verdict was so excessive as to evince passion, prejudice and caprice on the part of the jury.

(9) The court erred in not granting a new trial on newly discovered evidence.

Mrs. Lula B. Epperson, of Clarksville, Tennessee, came to Nashville, on August 24, 1926, to bring her sick daughter to the Protestant Hospital. One of her friends in Nashville told her of a man from whom she might purchase blankets, and that he had an office on the fourth floor of the Chamber of Commerce Building, on Fourth Avenue North, in the City of Nashville. She and her friend, Mrs. Dodd, started to his office. They got off of the elevator at the fourth floor.

The floors of the Chamber of Commerce Building were waxed and polished. The second and third floors were made of pine and the fourth, fifth and sixth of oak. All were sanded, coated with shellac, waxed and polished.

In front of the elevators on the fourth floor was a rubber mat two or three feet wide. Mrs. Epperson stepped from this mat on to the waxed floor and walked a few feet on the waxed floor when she slipped and fell on the floor.

Her hip was fractured by the fall. It is a permanent injury; and her activities are impaired from seventy-five to ninety per cent.

1. The first assignment of error, that there is no evidence of negligence to support the verdict, is not well made and must be overruled, for three reasons: First, the lessee covenanted to repair and maintain the building and it is liable in damages to third persons for personal injuries resulting from the unsafe condition of the premises. Second, the defendant corporation was organized for the purpose of obtaining the lease of this building, and its sublessee, the Commercial Club or Chamber of Commerce, was a mere subsidiary agency of said corporation, and it is liable for the negligence of its agent. There was evidence from which the jury could have inferred that the defendant corporation was operating and carrying on its business under the name of the Chamber of Commerce. Third, there was evidence that the wax was negligently placed on the floor unevenly, which rendered it slick and dangerous.

The Commercial Club of Nashville, a public welfare corporation, was organized and chartered February 18, 1914. The Commercial Club Corporation, a corporation for profit, was chartered January 7, 1916. Its stock was purchased largely by the members of the Commercial Club.

The charter of the Commercial Club Corporation recites that the corporation was organized "for the purpose of purchasing, owning, improving, using, occupying, renting, leasing, enjoying and conveying

real estate, and especially for the purpose of acquiring the Vanderbilt Law Building . . . and of subleasing . . . to the Commercial Club of Nashville; that this corporation shall not at any time own any greater real estate than a lot or parcel of ground 400 feet square. . . ."

Under date of January 31, 1916, the Commercial Club Corporation leased from Vanderbilt University this building for the term of twenty-five years at an annual rental of $4500, payable quarterly in advance, for which it executed its notes. The lease contains the following sections:

"2. The Lessee contracts to expend not less than the sum of Seventy-five Thousand ($75,000) Dollars in improving and remodeling the building on said property, and in furnishing same but not more than Fifteen Thousand ($15,000) Dollars thereof shall be expended in furnishings and fixtures in conformity with plans and specifications to be provided by and at the expense of the Lessee and to be approved by the Lessor; and said improving and remodeling and furnishing shall be begun at once and prosecuted diligently until completion. The Lessor agrees that it will lend to the Lessee the sum of Twenty-five Thousand ($25,000) Dollars for use in such improving and remodeling; provided, however, that the Lessee shall first satisfy the Lessor that it (the Lessee) has or will have available for said purpose an additional sum of not less than Fifty Thousand ($50,000) Dollars; and provided further, that said sum of Twenty-five Thousand ($25,000) Dollars to be loaned by the Lessor to the Lessee shall not be paid over to or used by the Lessee until the Lessee shall have expended for said purpose, or shall in a manner satisfactory to the Lessor have provided for said purpose, not less than the said sum of Fifty Thousand ($50,000) Dollars.

"The said loan of Twenty-five Thousand ($25,000) Dollars to be made by the Lessor to the Lessee shall be repaid in annual installments of One Thousand ($1,000) Dollars each, and the Lessee shall execute and deliver to the Lessor its twenty-five (25) promissory notes therefor each in the sum of One Thousand ($1,000) Dollars, falling due respectively at successive annual intervals, and bearing interest at the rate of five per cent (5%) per annum, payable semi-annually.

"The Lessee shall secure the payment of said notes and of its rent and other undertakings herein by a deed of trust of its furnishings, fixtures and other property; and it shall keep said furniture, fixtures, etc., adequately insured with loss payable clause therein in favor of the lessor.

"3. The Lessor shall insure said building and keep it insured against fire, lightning, storm or tornado in the amount of Seventy-five Thousand ($75,000) Dollars; and the Lessee shall, on de-

mand, reimburse the Lessor the cost of such insurance, failing which the Lessor shall have the right to recover the cost thereof from the Lessee.

"4. The Lessee shall accept said property in the condition that it is now in, and the Lessor shall not be required (except as provided in section 8 hereof) to make any repairs or improvements to the leased premises during the period of this lease or any renewal thereof, and shall not be liable in any manner whatsoever for any repairs, improvements or remodeling that may be done by the Lessee; and the Lessee shall not have the right to make any change in the building except as hereinabove provided, unless such changes shall first be submitted to, and shall be approved in writing by, the Lessor.

"5. The Lessee shall keep and maintain said property in good repair and in good sanitary condition, and shall pay all water taxes that may be assessed against the same during the period of this lease, and shall not keep anything on said premises which might vitiate the insurance thereon.

"6. The Lessee shall have the right to sub-let or sub-rent any portion of said building, excepting to persons of African blood or to such persons as may occupy or use the same for unlawful or immoral purposes, but it shall not have the right to assign this lease. Likewise said leasehold interest shall not be assignable or transferable by the voluntary act of the Lessee or by reason of bankruptcy or by operation of law; and anyone claiming under the Lessee shall take the leased premises subject to all of the conditions, provisions and stipulations contained in this lease."

The building was improved and hardwood floors put in by the lessee Commercial Club Corporation.

There is some evidence that the Commercial Club Corporation leased the building to the Commercial Club of Nashville, which later changed its name to Chamber of Commerce. Plaintiff's counsel called for the lease from the Commercial Club Corporation to the Commercial Club of Nashville, but it was not found or produced, and the court was not informed of its contents or of the length of time it covered. Mr. Manier, manager of the Chamber of Commerce, testified that the Chamber of Commerce was responsible for keeping the building in proper condition and repair.

The Commercial Club Corporation leased this building from Vanderbilt University and covenanted to keep it in repair and maintain the building during the term of the lease, but it was prohibited from assigning the lease. This lessee therefore obligated itself to keep in repair and maintain the building that it might not be dangerous to invitees and others lawfully on the premises. The fact that it sublet the building to the Commercial Club of Nashville did not exonerate it from its duty or shift its responsibility in this respect to the sublessee. The liability of the lessee arising from its express

contract is permanently fixed during the whole term of the lease so that no act of it can absolve it from the lessor's demands set out in the lease, and the express covenants in a lease continue to be binding upon the covenantor notwithstanding the assignment of the lease or the subletting of the premises. Jones on Landlord & Tenant, sec. 447; Taylor on Landlord & Tenant (9 Ed.), sec. 110; 35 C. J., 1001, sec. 109; State v. Martin, 82 Tenn., 92; Dunn v. Archer, 150 Tenn., 440, 265 S. W., 678.

There is a vast difference between assigning the lease and subletting the property. In this instance the lessee was permitted to sublet the property but was expressly prohibited from assigning the lease. The assignment creates a privity of estate between the original lessor and the assignee, but in the case of a sublessee there is no privity of contract or estate. It follows that the assignee of the lease is bound by the covenants therein which run with the land, while the sublessee is not bound by the covenants in the original lease unless it has expressly agreed to become so bound. 2 Fletcher's Cyc. of Corporations, sec. 1251; 7 Fletcher's Cyc. of Corporations (2 Ed.), sec. 2990; Jones on Landlord & Tenant, sec. 467; Taylor on Landlord & Tenant (9 Ed.), secs. 16, 108, 109.

Where nothing is said in the lease about who shall repair the property the lessee must repair it, but where the lessee expressly covenants to repair and maintain the property during the term of the lease it is liable in damages to third persons for personal injuries caused by the neglect of that duty. 3 Shearman & Redfield on Negligence (6 Ed.), sec. 708a; DuPont Rayon Co. v. Roberson, 12 Tenn. App., 261, 269.

Hence the Commercial Club Corporation is liable as lessee to the plaintiff for personal injuries resulting from the dangerous condition of the premises, provided it had notice of the dangerous condition. DuPont Rayon Co. v. Roberson, supra.

It is insisted that the wax was put on by an employee of the Chamber of Commerce or the Commercial Club of Nashville, a subtenant, and that he was not an employee of the Commercial Club Corporation, and therefore the latter corporation is not liable for the negligence of a subtenant's servant or employee. 3 Shearman & Redfield on Negligence (6 Ed.), sec. 708a, Note 109. Ordinarily, this proposition is true where such employee negligently injures another while in the act of performing a duty for the subtenant, as he is not the agent of the tenant, but the Commercial Club Corporation under its covenants for repairs and maintenance is liable for the dangerous condition of the premises irrespective of who placed the premises in such condition if it had notice of the defect or dangerous condition.

The evidence shows that the wax had been put on this floor some three or four months before this accident and had been on there a sufficient length of time for the Commercial Club Corporation to have

notice of the dangerous condition. City of Nashville v. Nevin, 12 Tenn. App., 336; Nashville v. Patton, 2 Higgins, 515. However, the agents of the defendant had actual notice of the dangerous condition of these waxed floors.

It is evident that the Commercial Club Corporation was brought into existence and organized for the purpose of leasing this building and subletting it to the Commercial Club of Nashville. The Commercial Club of Nashville is a welfare corporation and it is doubtful whether it has any assets, as it has no capital stock. The lease contract between Vanderbilt University and the Commercial Club Corporation provided on its face that the Commercial Club Corporation must pay the University $4500 per annum rental for twenty-five years for which it executed its notes. It agreed to expend $75,000 in repairs and borrowed $25,000 from the University, which it agreed to pay at the rate of $1000 per year during the term of the lease. It agreed to keep the building insured and to repair and maintain said building during the term of the lease, but it was prohibited from assigning the lease to others, thus showing that Vanderbilt University intended that the Commercial Club Corporation should have control of the building during the whole term of the lease contract. There is some evidence that the Commercial Club of Nashville had changed its name to the Chamber of Commerce. But its officers testified that the Chamber of Commerce was operating under the lease from Vanderbilt University to the Commercial Club Corporation; hence there was evidence that the Commercial Club Corporation was operating under the name of the Chamber of Commerce. The members of the Chamber of Commerce were the stockholders of the Commercial Club Corporation.

Where one corporation actually controls another and operates both as a single system the dominant corporation will be liable for injuries due to the negligence of the subsidiary corporation. See Towles & Co. v. Miles, 131 Tenn., 79, 173 S. W., 439; Dillard & Coffin Co. v. Richmond Cotton Oil Co., 140 Tenn., 290, 204 S. W., 758; Acuff v. Albert Robbins Co., 1 Tenn. App., 708, 712; 51 C. J., 1089, 1095; Powell on Parent & Subsidiary Corporations, secs. 4-11; James C. Davis, Agent, v. L. D. Alexander, 269 U. S., 115, 70 L. Ed., 186.

It results that the employee of the Chamber of Commerce is an agent or employee of the Commercial Club Corporation, and the latter corporation is liable for the negligence of such employee in putting the wax unevenly on the floor, and of course no notice of such dangerous condition is necessary for the reason that the negligence of the employee is the negligence of the corporation itself. Williams v. City of Nashville, 145 Tenn., 668, 238 S. W., 86; Elrod v. Franklin, 140 Tenn., 244, 204 S. W., 298; Clarksville v. Deason, 9 Tenn. App., 278; 3 Shearman & Redfield on Negligence (6 Ed.), 1862, sec. 708a.

There was evidence that the wax was negligently placed on the floor unevenly and that it was thicker in some places than in others which rendered it slick and dangerous. The evidence was to the effect that where wax is left in lumps on the floor the outside will dry while the inner part of the lump will remain greasy and slippery, thus making the floor slick and dangerous; hence there was sufficient evidence on these propositions to carry the case to the jury.

2. The assignments of errors as to the admission of evidence that the floors were unevenly waxed, slick and slippery and were the slickest floors the witnesses had ever seen, and that other people had fallen on this and other floors of this building before this accident, are not well made and must be overruled.

The defendant contends that the testimony of witnesses as to the slickness of the floor and the comparisons of the fourth floor with the other floors were expressions of opinion and invaded the province of the jury. We are of the opinion that the statements of these witnesses that the floors were very slick were mere descriptions of the condition of the floors and not the expression of an opinion.

"Outside the area of expert testimony there are many cases where, from their very nature, nonexpert witnesses are permitted to express an opinion. The admissibility of such testimony rests on the ground of necessity. The facts from which the conclusion of the witness is drawn are of so latent or impalpable a character that it is impossible to present them in a tangible or intelligible form to the jury. This being so, necessarily they must be given by the witness as conclusions reached by or impressions made upon him, or they will be lost altogether to consideration." Cumberland Telephone Co. v. Dooley, 110 Tenn., 109-110, 72 S. W., 457; Blake v. Great Atlantic & Pacific Tea Co. (Mass.), 164 N. E., 486.

The expressions complained of, used by these witnesses, were not mere expressions of opinions but were statements of fact, and it would have been difficult for the witnesses to have used other expressions that would have conveyed the same meaning. Hence we think there is nothing in this proposition.

We think there is nothing in the assignment that the court erred in admitting evidence that other people had fallen on this floor or other floors of the same building before this accident, as witnesses testified that the floors were all treated alike and were kept in the same condition since the offices were put on those floors.

"The Court of Civil Appeals was of the opinion that the evidence showed the floor in the instant case to be substantially in the same condition when the prior falls occurred as when the plaintiff, Mrs. Smith, fell. But the Court of Civil Appeals was of the opinion that evidence of the prior falls was inadmissible because it was not shown that the other persons who fell wore

the same kind of shoes, that they did not have protruding nails in their shoes, and did not walk in the same manner that Mrs. Smith was walking at the time she fell.

"As said by learned counsel for plaintiffs, we think this view is hypercritical, and, if sound, would result in the exclusion of such evidence in practically every case. It was only necessary to show that the condition of the floor was substantially the same when other persons slipped and fell upon it. The plaintiff, Mrs. Smith, is presumed to have exercised ordinary care. The burden was on the plaintiffs to show an abnormal, negligent, or defective condition in the floor when Mrs. Smith fell, and to show the same condition when the other persons fell. This may be shown by proving that the floor was in the same condition when other persons fell as it was when the plaintiff Mrs. Smith fell. It was not necessary for the plaintiffs to prove that the other persons who fell did not wear dangerous shoes with protruding nails, nor did not walk in an improper manner. In other words, plaintiffs were not required to negative any possible abnormality of other persons who fell on defendant's floor." Gerber & Co. v. Smith, 150 Tenn., 267-8, 263 S. W., 974; 22 C. J., 743, 759; 8 Ency. of Evidence, 928-930; Wigmore on Evidence (1923 Ed.), sec. 458.

In Mauldin v. Schwill & Co., 1 Tenn. App., 355, the Court of Appeals stated that evidence that a witness slipped on the north part of the ramp was admissible where plaintiff slipped on the south part of the same ramp.

3. The assignment that the court erred in admitting evidence over objection that the defendant had failed to provide rugs and runners across this floor, for the reason that this ground of negligence was not averred in the declaration and the admission of this testimony amounted to a variance, is not well made and must be overruled.

Where the declaration averred special acts of negligence as grounds for recovery, the plaintiff cannot recover on proof of other acts of negligence. East Tennessee Coal Co. v. Daniel, 100 Tenn., 65, 42 S. W., 1062. A declaration for negligent injury should aver the fact and the manner of negligence. 14 Ency. of Pleading & Practice, 336. But it is not necessary to allege all facts about unguarded excavations or dangerous places. 45 C. J., 1095, sec. 668, note 5.

We are of the opinion that the negligence complained of is the negligent placing of the wax on the floor so that the floor became slick, slippery and dangerous. The failure to place rugs or runners on the floor was not negligence, but it was negligence to apply the wax in such a manner as to make the floor dangerous, and the fact that the defendant did not guard the dangerous floor with rugs or runners is not a specific act of negligence, and we do not think that the evidence on this proposition prejudiced the defendant's case.

The maintenance of the slick, slippery and dangerous floor was the gist of the action, and the absence of rugs or runners was only an incident, it was not another cause of action. Smith v. Fisher, 11 Tenn. App., 286.

4. The assignment that the plaintiff was guilty of contributory negligence and assumed the risk of obvious danger, is not well made and must be overruled. Generally the question of contributory negligence is for the jury. Mrs. Epperson testified that she paid no special attention to the floor as she stepped off of the rubber mat and started across the hall. She cannot be said to have appreciated the danger and to have accepted the risk, as stated in Baker v. Railroad, 106 Tenn., 490, 61 S. W., 1029; Bouchard & Sons Co. v. Keaton, 9 Tenn. App., 467.

"On the contrary, the owner or occupier of real property is under the duty of exercising reasonable or ordinary care and prudence to the end of keeping his premises safe for the benefit of those who come upon them by his invitation, express or implied; and if, through a neglect of this duty, they are, without negligence or fault of their own, injured by reason of any negligent defect therein, he must pay damages. The person so invited to come upon the premises of the other, is entitled to assume that they will be in a reasonably safe condition." 1 Thompson on Negligence, sec. 968; Dush v. Fitzhugh, 2 Lea, 307.

" 'The owner or occupant of premises who induces others to come upon it by invitation, express or implied, owes to them the duty of using reasonable or ordinary care to keep the premises in a safe and suitable condition, so that they will not be unnecessarily or unreasonably exposed to danger.' 29 Cyc., 453.

" 'The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which can come to him only from violation of law or duty to such other person.' 29 Cyc., 516. 'And if the conditions are such as to mislead a person, failure to discover danger is not negligence. So negligence is not imputable to a person for failing to look for danger when under the surrounding circumstances he had no reason to apprehend any.' 29 Cyc., 514.

" 'To constitute contributory negligence the act or omission of the person injured must be one which he could reasonably anticipate would result in his injury.' 29 Cyc., 520.

"But, after all, the question before this Court is not whether Ellis was guilty of contributory negligence, but the question here is whether that question was so far debatable as that it should have been submitted to a jury.

" " 'When a given state of facts is such as reasonable men may

fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of law for the Court.' Traction Co. v. Brown, 7 Cates, 323, 329.'' Ellis v. Cotton Oil Co., 3 Higgins, 653-4-5.

''Testimony that a customer, slipping on oiled floor, did not look at condition of floor, held not to establish contributory negligence as a matter of law.'' Woolworth Co. v. Saxton (Ohio), 177 N. E., 219.

5. The court did not err in refusing to charge the special requests, as he had had covered some of them in his general charge, and the special requests such as that the testimony about the comparison of floors was incompetent, and that evidence relating to the failure to place runners or rugs on the floor was incompetent, and that no recovery can be had where the defendant followed the usual, customary and ordinary usages of the business in waxing and polishing the floor, and that if the slick and slippery condition of the floor was open and obvious when the plaintiff attempted to walk thereon no recovery could be had, were properly refused for the reasons heretofore stated in this opinion. The customary way of doing a thing may be a negligent way. Smith v. Fisher, 11 Tenn. App., 274.

6. The assignments that the court erred in charging the jury that if the floor was kept and maintained in an unsafe condition, known to defendant, or could have been known by the exercise of ordinary care, and as a result an invitee was injured, the defendant is liable; and, evidence that others had fallen on the fourth floor, when the conditions were similar, might be considered in determining if the floor was kept and maintained in a negligent condition and to show knowledge of its condition, are not well made and must be overruled for the reasons hereinabove stated.

7. The assignment that the court erred in admitting a copy of the charter of the Commercial Club of Nashville for the purpose of proving the fact of its corporate existence only, is not well made and must be overruled for the reason that the proof of the contents of its 'charter was immaterial.

8. We are of the opinion that the verdict was not excessive. Mrs. Epperson was the proprietor of a hotel in Clarksville, Tennessee. She was an active woman of the age of fifty-six years. She is permanently disabled by this fracture of her hip. Her physician stated that her activities are impaired from seventy-five to ninety per cent. One leg is shorter than the other, and she suffers constant pain. Her doctor, X-ray and medical bills were about $1000. She now has to hire two assistants to help her run the hotel—a clerk and an assistant housekeeper.

9. The assignment that the court erred in not granting a new trial on newly discovered evidence is not well made for two reasons: First,

no sort of diligence to secure the newly discovered evidence set out in the affidavit was shown. A mere statement of the newly discovered evidence accompanied by an affidavit, is not sufficient for a new trial. The facts constituting diligence must appear and be specifically set out so that the court may determine whether due diligence was used. Travis v. Bacherig, 7 Tenn. App., 638. Second, the newly discovered evidence could not change the result.

All of the assignments of errors having been overruled the judgment of the lower court is affirmed. A judgment for $6000 with interest from April 23, 1931, to the present, will be entered in this court in favor of Mrs. Epperson and against the defendant Commercial Club Corporation. The cost of the cause including the cost of the appeal is also adjudged against the Commercial Club Corporation and the surety on its appeal bond.

Faw, P. J., and DeWitt, J., concur.