## STENBERG *v.* WILLCOX.

### (*Nashville.* February 4, 1896.)

LANDLORD AND TENANT. *Landlord's liability to tenant's guest for injury resulting from unsafe condition of leased premises.*

Where unsafe premises are leased, to be used as a boarding house, the lessor, if he knew the unsafe condition of the premises, or could have known it by the exercise of reasonable care and diligence, is liable to the lessee's guest or boarder who has sustained personal injuries as the result of such unsafe condition of the premises.

Cases cited: Young *v.* Bransford, 12 Lea, 244; 59 N. Y., 28; 66 Md., 325; 20 Pa., 387; 26 Pa., 11; 8 Gray, 195; 29 N. J. L., 545; 76 N. Y., 92; 66 Cal., 182; 80 Ky., 598; 60 N. Y., 229; 98 N. Y., 249; 2 Salk., 460; 9 C. B., N. S., 377; L. R., 2 C. P. Div., 311; 80 Maine, 62, 77; 5 Best & S., 78.

---

FROM DAVIDSON.

---

Appeal in error from Second Circuit Court of Davidson County. CLAUDE WALLER, J.

E. A. PRICE, J. W. GAINES, and H. PARKES for Stenberg.

R. McP. SMITH for Willcox.

WILKES, J. The facts in this case, and the result of the trial in the Court below, are the

same, substantially, as in the case of *Hines* v. *Willcox,* ante, p. 148, except that the plaintiff, Mrs. Stenberg, was a boarder in the house which Mrs. Hines occupied as a tenant of defendant, Willcox. She was injured at the same time, and by the same accident, as that which resulted in the injury to Mrs. Hines. The plaintiffs have appealed and assigned errors. The same errors are assigned as in the Hines case, and others specially applicable to this and not to that case.

We need not go over the ground already occupied in that case, but merely content ourselves with saying, that if plaintiffs can recover at all in this case, it must be upon the ground that the landlord leased premises in a dangerous and unsafe condition, when he knew, or might, by the exercise of reasonable diligence and care, have known, of such unsafe condition, and upon the further ground that plaintiff did not know of such unsafe condition, and could not have known of it by the exercise of reasonable diligence and care, and not upon any contract between the defendant and Mrs. Hines of which Mrs. Stenberg may have known nothing, and to which she was not a party.

The Court charged the jury that "if an owner of a building leases it while it is in a dangerous condition, he is liable to persons injured on account thereof, provided such persons stand upon their rights strictly as third persons. For illustration: If a house be rented where the wall fronting on a

street is in decayed and defective condition, and
during the time of the lease it falls upon a passer-
by in the street, then the owner is liable for in-
juries so sustained, but those who claim upon the
ground that they were invited into a dangerous
place, must seek their remedy against the party
extending the invitation.    If they are guests of the
tenant, or boarders of the tenant, then the tenant,
not the owner, must be held liable for injuries to
such persons, even though the defects existed when
the lease was made.    The reason of this is," con-
tinues the learned Judge, "that such persons would
never have suffered injury from the defects if they
had not entered the premises, and such entry was
not made at either the request or invitation of the
owner, but upon the invitation of the tenant, who
holds herself out to the public as a keeper of a
boarding or lodging house."

The language is substantially the same as in
Sherman & Red. on Negligence, Section 711; but
the same author says, in the same section: "If the
landlord lets the premises for a purpose which he
knows, or ought to know, it to be unfit for, know-
ing that strangers will be invited there, it has been
held that he is liable to them."    And the same
author says, Section 709: "Even the entire surren-
der of control by the landlord does not relieve him
from liability to third persons for defects which ex-
isted in the premises when he parted with the con-

trol, not even if the tenant had agreed to make repairs," etc.

It clearly appears by the proof in this case that the defendant knew the premises were to be used as a boarding house, recommended it for this purpose, and urged its location near the Union Depot as a desirable feature for this purpose.

The Court also charged: "It is admitted in this case that the plaintiffs were boarders with the tenant when injured, and, in consequence, there is no liability to them upon the part of defendant, upon the ground that he rented premises while in a dangerous and defective condition. So, as to that theory of the case, you will not inquire, but will find for the defendant."

These charges are assigned as errors, among others. Upon the legal questions raised by these assignments, the able counsel have furnished elaborate arguments, and have cited many authorities.

In the case of *Swords* v. *Edgar*, 59 N. Y., 28, the owners, and not the lessees, of a pier, used in unloading vessels, were held liable for the injuries sustained by a longshoreman, by reason of defects which existed at the time of the lease. The Court held that the plaintiff, being in the employ of the vessel, was there by invitation, and was entitled to protection which would result from having the pier in an ordinary state of strength and security.

In *Albert* v. *State*, 66 Md., 325 (6 Cent. Rep., 447), plaintiff's parents were drowned by reason of

the defectiveness of a wharf in the occupation of defendant's tenant.   The jury was charged that, if they found "that the defendant was the owner of the wharf, and that he rented it out to the tenant, and that at the time of the renting the wharf was unsafe, and the defendant knew, or, by the exercise of reasonable diligence, could have known, of its unsafe condition, and the accident happened in consequence of such condition, then the plaintiff was entitled to recover."   Approved, on appeal, as correct.

In *Godley* v. *Hogarty*, 20 Pa., 387, approved in *Carson* v. *Godley*, 26 Pa., 11, it was held that, where the owner of real estate erected thereon a row of buildings, with the intention of renting them to the government as a bonded warehouse, and with the knowledge that they would be obliged to stand very great weight, he was liable in damages for an injury to a person employed in one of the storehouses, occasioned by its fall, after having been so rented, though the immediate cause of the accident was the storage of heavy merchandise in the upper story, it appearing that the building had been constructed on defective plans and of insufficient strength.

See, also, cases collected and digested in Ray on Negligence Im. Duties, pages 48–53.

In *Waggoner* v. *Germains*, 3 Denio, it was held that the seller of premises upon which a nuisance existed at the time of sale, was liable on the ground

that the nuisance existed when the conveyance was made, and the same principle is recognized in *Suton-stall* v. *Banker et als.*, 8 Gray, 195, where the Court said that if the nuisance existed at the time of the lease, the landlord would be liable. And in *Durant* v. *Palmer*, 29 New Jersey Law, 545, the landlord was held liable for a nuisance arising from the structure of the building.

*Camp* v. *Wood*, 76 N. Y., 92, was a case where defendant owned an inn or boarding house. In the third story was a hall, which he rented out to certain parties, who used it for the purpose of giving a dance. Plaintiff bought a ticket and attended the ball. He left about 11 o'clock at night, somewhat under the influence of liquor, and, instead of going to the ground floor leading to the street, he walked out through an open door onto the top of a piazza, which had no railing around it, and from there steppep off to the ground. Held, that the landlord was liable. In *Jessen* v. *Sweigert*, 66 Cal., 182, it was held that the owner, and not the tenant in possession, was liable for injury resulting to a third person from the fall of an awning in front of the building.

It is the duty of the landlord, when he leases the property, to disclose to the tenant the true condition of the same, and to point out and make known to the tenant such defects as he knows to exist in the premises, or which he could know by reasonable diligence, and if he fails to do so, and the tenant, or person relying upon his representations, is in-

jured, the landlord is responsible therefor. This principle was settled in *Coke* v. *Guthkese*, by the Kentucky Court. 80 Ky., 598; 44 Am. Rep., 499. This was an action for damages resulting to appellant, by reason of a defective privy floor, through which she fell into the vault below and was injured. The petition alleged, in substance, that the father of the plaintiff had rented from the defendant the premises on which the privy was situated, for one year, and, at the time he rented, the defendant knew the timbers upholding the floor were unsafe, but did not disclose, but suppressed his knowledge of its condition from the father; that neither she nor her father could discover the dangerous condition of the floor, by reason of the character of its construction; that she fell through the floor and was precipitated into the vault below, and was greatly damaged physically and mentally by the fall, for which she prayed judgment for $10,000 as damages. The Court said that, "although the law presumes that it was her father's duty to repair, in the absence of an agreemeent otherwise, still we are of the opinion that if the appellee rented the premises knowing that the privy was in the condition alleged, it was his duty to disclose his knowledge, because it was a portion of the premises, as all men know, which would be in daily use by his tenant and family, and, unless apprised of the hidden danger, they would be inevitably injured, and the younger and more helpless perhaps lose their lives. And if, as alleged, he failed to disclose his knowl-

edge, but nevertheless rented the dangerous tenement to the defendant's father, with whom she lived, he is responsible for the injury she received." To the same effect see the holding of the New York Court in *Cæsar* v. *Karutz*, 60 N. Y., 229, where the landlord knowingly rented to the tenant premises infected by a contagious disease without notifying the tenant thereof. The landlord was held to be liable, in a case where the disease was communicated, for the damages sustained.

In *Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y., 249, it was held that it is the duty of the landlord to disclose to the prospective tenant any defective condition from which danger or accident is likely to arise. The Court say: "If he demise the premises, knowing that they are dangerous and unfit for the use they are hired for, and fails to disclose their condition, he is guilty of negligence, which will, in many cases, impose responsibility upon him. If guilty of negligence or other delictum, which leads directly to the accident and wrong complained of, he is liable; if not so guilty, no liability attaches to him. If he lets a building for a warehouse, knowing that it is weak and so imperfectly constructed that the floors will break down from the weight necessarily to be placed upon them, his negligence imposes a liability upon him for the injury to the person or property of anyone who may lawfully be upon the premises, using them for the purpose for which they were demised. If one

builds a house for public amusements or entertainments, and lets it for those purposes, knowing that it is so imperfectly and carelessly built that it is liable to go to pieces in the ordinary use for which it is designed, he is liable to the 'persons injured for his carelessness. And this rule of responsibility goes far enough for the protection of lessees and the public generally."

In the case of *Ahearn* v. *State*, 115 N. Y., numerous cases are cited by Earle, Justice, holding that if the landlord lease premises with a nuisance on them, he will be responsible in damages. In support of this position, the learned Judge cites the case of *Roswell* v. *Prior*, 2 Salk., 460, where a tenant for years erected a nuisance, and afterwards made an under lease, and the question was whether, after a recovery against the first tenant for years for the erection, an action would lie against him for the continuance, after he had made an under lease, and it was held that it would, "for he transferred it with the original wrong, and his demise affirms the continuance of it."

Again, "in *Todd* v. *Flight*, 9 C. B., N. S., 377, it was held that an action lies against the owner of premises who let them to a tenant in a ruinous and dangerous condition, and who causes and permits them to remain so until, by reason of the want of reparation, they fall upon and injure the house of an adjoining owner."

Again, in *Nelson* v. *Liverpool Brewery Co.*, L.

R., 2 C. P. Div., 311, it was held that a land-
lord is liable for an injury to a stranger by the
defective repair of demised premises only when he
contracted with the tenant to repair, or where he
has been guilty of misfeasance—as, for instance, in
letting the premises in a ruinous condition—and that,
in all other cases, he is exempt from responsibility
for accidents happening to strangers during the ten-
ancy.

Again, in Woodfalls on Landlord and Tenant
(13th Ed.), 735, it is said: "As regards the liabil-
ity of landlords to third persons, it may be taken
as a general rule that the tenant, and not the land-
lord, is liable to third persons for any accidents or
injuries occasioned to them by the premises being
in a dangerous condition. The only exception to the
rule appears to arise when the landlord has either
(1) contracted with the tenant to repair, or (2)
where he lets the premises in a ruinous condition,
or (3) where he has expressly licensed the tenant to
do acts amounting to a nuisance."

Again, in *Nugent* v. *Boston, C. & M. R. Co.*,
80 Maine, 62, 77 (5 New Eng. Rep., 865), Virgin,
J., writing the opinion, said: "It is settled law
that where the owner lets premises which are in a
condition which is unsafe for the avowed purpose
for which they are let, or with a nuisance upon
them when let, and receives rent therefor, he is
liable, whether in or out of possession, for the in-
jury which results from their state of insecurity, to

persons lawfully upon them; for by reason of the letting for profit he authorizes the continuance of the condition they were in when he let them, and he is therefore guilty of misfeasance."

Again, in the case of *Gandy* v. *Jubber*, 5 Best & S., 78, the owner of premises, attached to which was an area, let the same to a tenant from year to year, and died, having devised the property, with an iron grating over the area improperly constructed and out of repair, so as to amount to a nuisance, to the defendant, who, having notice of the nuisance, suffered the tenant to remain in occupation of the premises upon the same terms as before, receiving the rent, and it was held that he was liable for the damage caused by the nuisance, on the ground that he had relet the premises with the nuisance thereon.

Again, quoting from Wood's Landlord and Tenant (2d Ed., p. 1297): "The landlord's right of possession being suspended during the term, it follows that his liabilities in respect to the possession are also suspended, except as to such matters or defects in the premises as existed when the premises were let, arising from the manner of use or defective construction. If a nuisance existed upon the premises at the time of the demise, the landlord, as well as the tenant, is liable for the damages resulting therefrom, although it only becomes a nuisance by the act of the tenant while using it for ordinary purposes." This we understand to be the holding of

this Court in *Young* v. *Bransford*, 12 Lea, 244, citing 1 Thompson on Negligence, 317; Wharton on Negligence, Sec. 817. See, also, collation of authorities holding the same doctrine in 12 Am. & Eng. Enc. L., pp. 690–1, and notes; Taylor's Landlord & Tenant, Sec. 175 (8th Ed.); Sherman and Redfield on Negligence, Secs. 175, 175*a*.

We think there was error in the charge of the learned trial Judge upon the liability of the landlord to plaintiff under the facts of this case, and the judgment is reversed and cause remanded for a new trial. The appellee will pay the costs of the appeal.