HESTER v. HUBBUCH et al. (two cases), No. 14.—
170 S. W. (2d) 922.

Eastern Section.   November 27, 1942.

Petition for Certiorari denied by Supreme Court, April 3, 1943.

Harry Berke, M. A. Fleming, Jr., and W. R. Ferguson, all of Chattanooga, for plaintiffs.

Strang, Fletcher & Carriger, of Chattanooga, for defendant Hubbuch.

Sam J. McAllester, of Chattanooga, for defendant Noone.

Finlay & Campbell, of Chattanooga, for defendant Simmons.

HALE, J. In an effort to make a clear statement of the case, we shall refer to the parties as they appeared in the court below.

Suit was brought by the plaintiff Margaret Hester to recover for personal injuries sustained by her. A separate suit was brought by her husband, A. C. Hester, for medical expenses and loss of her services. The injuries complained of were caused by a piece of vitrolite or structural glass falling from a store front and striking Margaret Hester, who was passing along the street.

The suits are against Otto J. Hubbuch, doing business as the Hubbuch Glass Company, the sub-contractor installing the glass store front; against Clifford Simmons, doing bsiness as Clover Leaf Drug Company, the tenant; and against C. A. Noone, the owner of the building.

The cases were heard together. All of the defendants moved for a directed verdict. This motion was overruled and the case submitted to the jury, which found in favor of the defendant. Hubbuch, but gave judgment against Noone and Simmons (the owner and tenant respectively) in favor of Margaret Hester for three thousand dollars and her husband for seven hundred and fifty dollars.

Plaintiffs moved for a new trial in each case as to the defendant Hubbuch. These motions were overruled. The defendant Noone moved for a new trial in each case, which were granted and his motions for a directed verdict sustained and the suit dismissed as to him. Simmons moved for a new trial in each case, which were overruled. Plaintiffs then moved for a new trial so far as the court's action as to Noone was concerned. These were overruled.

Appeals in the nature of a writ of error were prayed and perfected by the plaintiffs and by the defendant Simmons.

A chronological statement of the case will aid in understanding the issues.

In March, 1936, Noone, the owner, leased this property to Bradley & Bandy for use as a retail drug store. The lease was for five years from April 1, 1936. The rent charge was based on a percentage of sales, with a minimum annual guarantee. The lessees were to make certain repairs, including a new store front, and the cost thereof, up to a specified maximum, was to be deducted from the rentals. The lease also provided that, with the exception of the roof and some other contingent repairs, "all other maintenance of the building shall be borne by the lessees."

In this lease it was further stipulated:

"(1) Lessees agree to take good care of the premises, and return the same at the expiration of said time in as good condition as received, ordinary wear and tear and natural decay excepted, unless destroyed by lightning or other natural cause, or fire not caused by their default; and not to erect, or permit to be erected on the premises, any nuisance, or commit any waste. (2) The lessees covenant to keep all glass, and all plumbing, water and gas pipes, and the premises generally in as good repair as when received, at their own expense, during the term of this lease . . . (5) Lessees agree to hold and save harmless the lessor against any and all claims, suits or judgments for damage or injury to persons or property caused by or arising out of any cause or condition in connection with the leased premises during the term of the lease, except such damage or injury as may be

caused by failure of the owner of the building after being informed in writing of the need to make repairs hereinbefore imposed upon him, and the lessees further agree that they will carry such public liability insurance as will constitute a reasonable and proper protection for all persons concerned, . . . (12) The premises may not be under-let, for the whole, or in part, assigned or transferred, without the written consent of the lessor, which the lessor will not unreasonably withhold, but in no event are the lessees relieved of any liability under this lease, . . . (15) It is further understood and agreed that the covenants and agreements herein contained are binding upon the parties hereto, as well as upon their respective heirs, administrators, successors, legal representatives and assigns.''

Thereafter, Bradley & Bandy made a contract with J. W. B. Lindsey to make certain improvements, including the installation of this front, and Lindsey sub-let that portion of the work to the Hubbuch Glass Company. Lindsey gave the Glass Company the plans and specifications for the work, which was done under the supervision of Lindsey and was approved by the architect employed by Bradley & Bandy. The contract required this front ''to be set in place with proper clamps or dowels against sound backing to form a permanent setting.'' This work was completed early in 1936. Noone had nothing to do with the installation of this front or its approval when completed, but as before pointed out, this was handled by the lessee and their contractor.

Vitrolite is an opaque structural glass and is fastened to the wall by daubs of mastic. The record shows that when so applied it is supposed to last a lifetime. Hub-

buch testified the mastic he used was a standard brand, made by an approved manufacturer.

Bradley & Bandy remained in possession of this property until January 20, 1941, when they sold the business to Simmons and his associates, McDonald and Allen, whose proposition to and accepted by Bradley & Bandy is as follows:

"In connection with our purchase from you this date, of merchandise, fixtures and equipment in the store located at 601 Market Street it is agreed that you are to transfer the unexpired portion of the insurance policies, prepaid taxes and licenses.

"It is further agreed that we are to assume responsibility for payment of current bills for lights, water, gas and telephone.

"It is further agreed that we are to lease the building at 601 Market Street from you for the period from January 20th, 1941, through March 31st, 1941, at a monthly rental of $400.00 per month.

"We also agree to accept and promptly pay for any merchandise which is now in transit and may be received after this date."

This was then approved by Noone, who at the same time executed a lease on this property to Simmons and his associates for a period beginning March 31, 1941. Rent was paid by the Clover Leaf Drug Company to Noone at the instance of Bradley & Bandy.

On February 18, 1941, while the plaintiff Margaret Hester was walking along Market Street in front of the store in question, a large piece of this vitrolite fell upon her from a distance of several feet, inflicting serious injuries. There is no assignment of error as to the amount of damages recovered by her and her husband

and it seems to be considered by all parties that she was free from negligence.

No one knows what caused this material to fall, other than there is some evidence that the mastic separated or split, but no evidence showing what caused it to do so. There is no evidence of any vis major, but the record shows that about the time Simmons and his associates purchased the business, a conduit was laid in front of the store, which required the use of a steam hammer, causing vibration. Simmons says he made a "routine inspection" of this glass after the conduit was laid. We think it apparent from his testimony that he used the word "routine" as having the same meaning as "casual." He subsequently testified as follows:

"Do you know why that glass fell?

"No, sir. There was no apparent cause, no warning it was going to fall, or anything else, no more than 25 or 30 other buildings around there.

"You never inspected that glass?

"Not that high up. I did nothing other than to see it.

"You never had your hands on it for the purpose of inspecting it?

"Around the bottom of the glass, I had noticed the size of it.

"Did you inspect it?

"I did at the bottom. I inspected it to see if it was loose.

"Why didn't you go up to the top and inspect it?

"I had no reason to do that.

"You did check it at the bottom?

"Yes sir.

"It was tight down there?

"Yes sir.

"Did you look at the top of it?

"Yes sir.

"Did it look all right?

"Yes sir.

"At all times?

"Yes sir.

Suit was not brought against Bradley & Bandy, presumably because it appears by inference they were nonresidents of the state.

The plaintiffs assign the following errors as to the defendant Hubbuch: (1) There was no evidence to support the verdict of the jury; (2) that error was committed by the trial judge in charging "there is no burden on the defendant Hubbuch to explain how the accident happened or what caused the glass to fall, if defendant Hubbuch was not in control of the premises or the glass front at the time;" (3) that the court erred in charging: "I instruct you that you cannot conjecture or guess about the cause of this accident, and if you find that the evidence leaves the matter in doubt and shows the injury might have been due to a cause or causes other than one for which defendants were responsible; then defendants cannot be held liable in this cause and you will find in favor of the defendants, or of any defendant as to which it would be necessary to guess or conjecture in order to find that defendant guilty of negligence."

██ Hubbuch's testimony tended to show the front was installed by him in the way and manner provided by contract between the general contractor and the lessee, and was accepted by them nearly five years prior to the accident. Clearly, there was evidence to support the jury's verdict.

In American Jurisprudence it is said:

"The general rule is well established that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner or employer and it has been accepted by him, even though the injury results from the contractor's failure properly to carry out his contract. When the work is finished by the contractor and accepted by the employer, the latter is substituted as the party responsible for existing defects, and the same rule is applied to subcontractors, so as to relieve them from liability to the original employer where their work has been finished and accepted by the original contractor. The reason for the substitution of liability is found in the general doctrine that an action for negligence will not lie unless the defendant was under some duty, which he has omitted to perform, to the injured party at the time and place where the injury occurred.

"The general rule has been applied in actions founded on negligence, and in actions involving damages caused by defects in chattels transferred under agreements providing for their use by the transferees for particular purposes during a definite or indefinite period.

"It has also been held that one of the consequences deducible from the general rule is that after the completion of a stipulated work, and its acceptance by the employer, a contractor is not bound to see that the subject matter of the work remains free from dangerous conditions, unless such a duty is imposed by an express agreement or by statute."

27 Am. Jur., "Independent Cont'r," Sec. 55, pp. 534, 535.

There was testimony to the effect that a number of things might have caused this glass to fall and the general

contractor expressed the opinion that it was some agency other than the mastic, but was frank to say that any explanation given would be a guess.

■ Under the record in this case there was no duty on the part of Hubbuch to explain what caused the glass to fall and any judgment against him would, of necessity, be based upon conjecture and speculation.

■ There was no error in the court's charge and the suit, as to Hubbuch, was properly dismissed.

Plaintiff's next assignment goes to the action of the trial judge in granting Noone a new trial and then entering a directed verdict in his favor. The assignments of error filed in behalf of Simmons raise the question of his liability and we think it best to discuss all these assignments together, in order to make a proper application of the law governing the relation of landlord and tenant.

We have tried to emphasize that the store front in question was erected by Bradley & Bandy without supervision or control on the part of the landlord. When the property was sub-leased to Simmons and his associates the owner agreed to it but without discharging the lessee. If there was any defective condition, it came into existence after the lease was made in 1936. The owner had no control of the property thereafter. The duty of maintenance was on the lessees and sub-lessees by virtue of the contract and the law of the land.

■ ■ The common law rule which prevails in Tennessee is, the landlord is not liable where the structure or work is not of itself a nuisance and where the letting was general in its character. Terminal Company v. Jacobs, 109 Tenn. (1 Cates), 727, 72 S. W. 954, 61 L. R. A. 188; Beaman v. Grooms, 138 Tenn. (11 Thomp.), 320, 197 S. W. 1090, L. R. A. 1918B, 305.

This court, in a learned opinion by Judge Crownover, said:

"Usually, the tenant only may be held liable to third persons for accidents growing out of the dangerous condition of the leased premises. But there are three exceptions: (1) Where the landlord has contracted to repair, (2) Where he lets the premises in a ruinous or dangerous condition, and (3) Where he has expressly licensed the tenant to do acts amounting to a nuisance. Woodfall's Landlord & Tenant (13 Ed.), 735; Shearman & Redfield on Negligence (6 Ed.), 709a; Stenberg v. Wilcox, 96 Tenn. 163, 172, 33 S. W. 917 [34 L. R. A. 615]." DuPont Rayon Co. v. Roberson, 12 Tenn. App., 261-269.

In American Jurisprudence it is said:

"A landlord is not liable to strangers where he has let premises which were in good repair at the time of the lease, where the injury resulted either from the misuse by the tenant of premises capable of a reasonable, ordinary use which would involve no injury to third persons, or from a nuisance created by the tenant during the lease, whether arising from an affirmative act or from the omission on his part to keep the premises in repair. Nor is he liable for injuries occasioned by any other wrongful act of the tenant or a stranger in placing the rented premises in a dangerous condition . . ." 32 Am. Jur. "Landlord and Tenant," Sec. 755, p. 639.

"The principal factors involved in determining whether responsibility for injuries to travelers upon highways adjacent to leased premises rests upon the landlord or the tenant, or upon both, where one at least is liable, or the condition of the premises or the structure in question at the time of letting, the character of such structure or premises, the responsibility for causative acts or omis-

sions subsequent to the letting, the right of control of the premises, and the rights and duties with respect to the making of repairs or alterations." 25 Am. Jur. "Highways," Section 368, page 663.

In Corpus Juris it is said:

"Where a lessor has given full control and possession of the demised premises and appurtenances thereto, to a tenant, and at the time of letting the premises were not in a dangerous condition, due to defects in construction, or to a continuing nuisance thereon, the lessor is not liable for personal injuries to a stranger due to the negligence of the lessee, or his servants, or agents, or to the defective condition of the premises occurring after the beginning of the lease." 36 C. J. 239.

■ ■ The great weight of authority is to the effect that the lessee of a completed building, which adjoins a highway, is prima facie liable to passers-by who may be injured by the fall of the structure or any part thereof, if the building or that part falling, is under his exclusive holding. He owes a duty to the public to use ordinary, reasonable care in the management and use of the building. See Lee v. McLaughlin, 86 Me. 410, 30 A. 65, 26 L. R. A. 197; Simms v. Kennedy, 74 Fla. 411, 76 So. 739, L. R. A. 1918C, 297; Annotation, 7 A. L. R., page 211; 28 Am. Jur., p. 665.

■ From the testimony of Simmons before quoted it is apparent that he recognized his duty to maintain the premises in a safe condition. The jury may have well concluded that he apprehended danger from the vibration caused by the steam hammer when the conduit was laid in front of his store, and that he was negligent in not inspecting or testing the glass in the upper part of the front. Or, to state it differently, that the prima facie

case against him as lessee was not rebutted but to the contrary was strengthened by his own testimony.

In view of what has been said we are forced to conclude that there was no error in dismissing the suit as to Noone, and that all errors assigned by Simmons in respect to his liability as lessee must be overruled.

The 9th assignment of Simmons urges that as the declarations aver the front was improperly installed by Hubbuch, who was acquitted of negligence, Simmons could not be negligent in its maintenance. This is a non sequitur. The jury may have found the glass was properly installed but improperly maintained after it became unsafe. What has been said of the inspection by Simmons is pertinent to this assignment, which we find to be without merit and overrule.

It is next said there is a variance between the allegations and the proof. We do not think so. The declarations aver that Simmons occupied and controlled the building and was negligent in the way he maintained it, especially the glass in question. This clearly presented what we consider to be the principal question in the suit.

It is next urged that the court erred in refusing to give certain special requests. In this there was no error, as the requests were at variance with what we have found to be liability of a lessee of property.

Finally, it is ably argued that the trial court erred in charging the doctrine of res ipsa loquitur was applicable. In American Jurisprudence it is said ''the doctrine has found a frequent application in cases of injuries from falling objects and substances'' (38 Am. Jur. ''Negligence,'' Sec. 306, p. 1003), and a great number

of cases are cited in support of this proposition. We think this is a sound rule and was properly charged.

It results that all assignments of error are overruled and the judgment of the court below affirmed in all things. One-half of the cost of appeal will be paid by the plaintiffs and one-half by defendant Simmons.

McAmis and Burnett, JJ., concur.