# CLEVELAND GAS CO. v. WOOLEN.—
## 205 S. W. (2d) 752.

Eastern Section. July 9, 1947.

Petition for Certiorari denied by Supreme Court, October 4, 1947.

Shepherd & Tipton, of Chattanooga, and Mayfield & Mayfield, of Cleveland, for plaintiff in error.

Thach & Thach, of Chattanooga, and Geo. E. Westerberg, of Cleveland, for defendant in error.

HALE, J. We speak of the parties as they appeared in the trial court. The plaintiff, Mrs. Woolen, sued to recover damages caused by an explosion of gas which had accumulated in the basement of her home. The suit was against The Cleveland Gas Company, which, as its name indicates, is a public utility operating a butane gas distribution system in Cleveland. There was a verdict for $3,500.00, which was approved by the trial judge when tested by defendant's motion for a new trial.

The present appeal in the nature of a writ of error was perfected by the defendant, which insists (a) it was not guilty of any negligence, and (b) the plaintiff was guilty of such contributory negligence as a matter of law so as to bar a recovery.

The declaration contained the following averment, among others, viz: "Plaintiff avers that the defendant had knowledge that its gas was escaping in the basement of her house and failed to take necessary precautions to protect the house and prevent the explosion. The plaintiff was not familiar with the operation of the water

heater or of the gas connections in the basement, which were made by the defendant and which it controlled and she did not know that the gas had escaped until she was informed by the defendant's employee.''

Some ten years previously the plaintiff had purchased a used water heater. It was installed by the defendant, which had sold it to the person from whom it was bought by the plaintiff. It was probably antiquated at the time it was installed; if not, it certainly became so by reason of the fact that it had no automatic cut off. These old type heaters have a pilot light which is fed by a small thread of gas. If the gas is cut off the pilot light is extinguished, and when the gas comes back on it must be relighted; if not, the gas operating the burner escapes. Modern type burners as so constituted that when the pilot light goes off there is thrown into action an automatic cut off which prevents further flow of gas. In all the numerous customers (some 2500 in number) served by the defendant in Cleveland the plaintiff had the only heater of this type. The defendant was thoroughly familiar with this heater and had tried unsuccessfully to sell plaintiff a new one, but it did not cease or undertake to cease serving her.

On the morning of February 22, 1945, there was some interruption of or disruption in the flow of gas to the customers in Cleveland. There is no showing when it began, how long it lasted, or whether it was general or confined to any particular area. W. C. McCrary, an employee of the Hotel Cherokee, said it was off that morning and they were late getting breakfast because they depended on gas for cooking. On cross-examination he said they didn't get breakfast until around 8:30 or 9. Then it was asked if the gas was back on by that time, to

which he replied, "Sometime that morning, yes, sir". Mr. George Westerberg said he knew the gas was off that morning; that he, as his custom was, undertook to light his gas stove and prepare to make coffee, when he found there was no gas, so he had to build a fire in the kitchen range. There is no showing how long this lasted.

Around 9:30 that morning the plaintiff was informed by one of her tenants (her property containing three apartments) that the water was not heating. She did nothing until about one that afternoon, when she turned the hot water faucet on and found there was no hot water. She then telephoned the defendant, which said it would get a man there as soon as it could. The office of the defendant was six short blocks from the plaintiff's residence. About 3 p. m., Don Howard, aged 17, who had had about eight months experience, came to plaintiff's residence, saying he was an employee of defendant. He said he was sorry he could not have come earlier but that he had had "so many places to go to, lots of trouble with their gas appliances". He was furnished a key to the basement and went in and then informed plaintiff the heater was not burning. In three or four minutes she came out of the house and found him still in the basement. He said the gas was very strong and she told him to come out and not breathe the gas and "don't strike a match". She went back into the house and then occurred the explosion. The cause of the explosion is unexplained. Howard's deposition was taken by interrogatories, he having subsequently entered the Army. He testified that altho he was a smoker and had matches on him at that time he did not strike a match, either in undertaking to light the pilot light or to light a cigarette. He was blown out of the basement and suffered severe

burns on his hands, face and neck. He told Mrs. Inman, a nurse at the hospital, that he struck a match. This testimony, however, was limited to contradicting him, he having denied making such statement to her.

Defendant theorizes that the gas was ignited by a spark from a defective electric drop cord which may have been hit by the employee Howard as he was leaving, thus causing the spark which ignited the gas. For the reasons hereafter set forth, we do not think it is vital as to what ignited the gas, but the question is, how did it get there in such an uncontrolled and dangerous volume?

Mr. B. L. Wright, the superintendent of the plant and distribution system of the defendant, was across the street reading meters when the explosion occurred. There is no explanation of the delay of approximately two hours in sending a man to inspect these premises. It seems that for a part of this time Howard was relieving an office employee who had gone to lunch. If he couldn't go, why not use Wright or some other employee? The distance was only six short blocks. And it must be remembered that of all the 2500 appliances served by the defendant in Cleveland this was the only one without an automatic cut-off. The defendant knew of the antiquity of this appliance and of its dangerous potentialities. It knew of the interruption of its service that morning. It did nothing to warn the plaintiff. All it did was finally to send a seventeen year old boy, when its experienced superintendent was immediately available for what should have been deemed an emergency, especially because of its superior knowledge of the interruption of the service and the possibility of injury to the plaintiff.

 We think the evidence in this case, due to its peculiarities which probably will never be duplicated, makes out a case of negligence so strong as to verge on a heedless indifference to consequences. Certainly, the defendant did not use the high degree of care, commensurate with the danger that may reasonably be expected to occur from the improper or negligent distribution of the most useful—and dangerous—servant of mankind. Nashville Gas & Heating Co. v. Phillips, 17 Tenn. App. 648, 69 S. W. (2d) 914.

"In an action for injury resulting from an escape or explosion of gas, the burden of proof rests on plaintiff to prove the facts constituting his cause of action. Hence plaintiff must prove that the cause of the injury was escaping gas, that such gas belonged to defendant company, that it escaped through the negligence of the company, that it accumulated in the place where the injury occurred, and that defendant's negligence proximately caused the damage. *It is not necessary, however, for plaintiff to show how the gas became ignited.*" (Emphasis supplied) 38 C. J. S., Gas, Sec. 47c (1).

Mr. Wright, the aforesaid superintendent, testified a sufficient amount of gas could not have accumulated between one and three to have caused the damage done. He gives nothing in support of this opinion, such as the flowage of the gas, the capacity of the basement, etc.

But it is argued that the plaintiff was guilty of contributory negligence as a matter of law, in that she was put on notice at 9:30 a. m. that the water was not heating and did nothing until 1:00 p. m. to call this to defendant's attention. She is a widow, apparently along in years, and had resided in Cleveland fifty years. She knew nothing of gas, and said that Superintendent

Wright, who installed this heater, told her it had an automatic cut-off. The heater was in the basement and kept under lock and key. Thereafter "if the water didn't seem to be heating I'd call him. He told me I could light it, but I was always afraid to take chances. I never did light it. . . . He always came or sent some one".

We see nothing in this case to take it out of the ordinary rule that the jury is to determine if there is proximately contributory negligence. We cannot say that she was guilty of contributory negligence as a matter of law.

It might be well to state here that the evidence indicated damages much greater than allowed by the jury. It may be that it found remote contributory negligence which was used as a basis for reducing damages.

The judgment below is without error and is affirmed with interest and cost.

McAmis and Burnett, JJ., concur.