ĘVENS *v.* YOUNG *et al.*

(*Nashville,* December Term, 1953.)

Opinion filed February 11, 1954.

DeWitt, Warner & Bell, of Nashville, for plaintiffs in error.

J. G. Lackey and T. I. Holman, Jr., both of Nashville, for defendant, Walter C. Young.

Cate & Cate, of Nashville, for defendant, Central Equipment & Supply Co.

Bailey, Ewing & Powell, of Nashville, for defendant, Nashville Gas Co.

Mr. Justice Gailor delivered the opinion of the Court.

This appeal presents three cases consolidated and heard together in the Circuit Court of Davidson County: (1) John R. Evens v. Walter C. Young, The Nashville Gas Company, and the Central Equipment and Supply Company; (2) Mrs. John Evens v. the same Defendants, and (3) John R. Evens and wife v. the same Defendants. The basis of all three actions is the alleged negligence of the Defendants, and the facts upon which such negligence is predicated, are identical in all three cases, and identically stated in the three declarations filed. The cases differ only in the parties Plaintiff, and the subject of damages.

All three declarations allege that the Plaintiffs, on or about April 2, 1949, purchased a dwelling house and lot from the Defendant, Walter C. Young; that Young was architect, contractor, and vendor of said dwelling house; that the original specifications for said house called for an electric water heater to be installed in a small closet beneath a stairway, but that Young substituted a gas water heater in the same space; that the gas water heater was purchased by Young from the Defendant, the Central Equipment and Supply Company, and that said Company installed the heater in the closet; that the Central Equipment and Supply Company notified the Nashville Gas Company that its installation had been made; that the Gas Company made an inspection and connected the gas system of the house with its regular lines, and after such inspection, lighted the pilot light of the gas heater.

After plaintiffs bought and moved into the house they found that the water heater was powered by gas, but did not realize that there was any danger from such installation; that from April 1949, until January 1952, plaintiffs used very little hot water; that on January 4, 1952, they had hired a washer-woman to do the family laundry, and that this greatly increased the load placed on the water heater for heating water necessary for washing; and that after the load was so increased on said water heater, then an explosion and fire occurred in the closet space where the heater was located; that said explosion was caused by the accumulation of gas in that space as a result of improper and incomplete combustion, which in turn, was caused by a lack of oxygen in the enclosed space where said heater was located.

The declarations allege that each of the Defendants knew, or should have known, of the dangerous qualities

of gas when not afforded proper combustion; that the Defendant, Walter Young, who drew the plans and supervised the construction of the house, knew, or should have known, that the closet space did not have an adequate supply of oxygen; and that his substitution of a gas heater for an electric heater, was a negligent act, and that his negligence was a proximate and contributing cause of damages suffered by the plaintiffs.

The declarations allege that the Defendant, the Central Equipment and Supply Company, prior to installing its gas heater, observed both the specifications and the house as actually constructed, and knew, or should have known, that the closet space wherein the heater was to be installed, did not have an adequate supply of oxygen; and that this Defendant, by the exercise of ordinary care, knew, or should have known, that the installation of a gas water heater in the closet would create a hazardous condition which would endanger the lives and property of the occupants of the house; and that said Defendant owed the occupants a duty to refrain from creating such a hazardous condition; and that the act of this Defendant in installing the gas heater, was a negligent act, and that its negligence was a proximate and contributing cause of the damages suffered by the plaintiffs.

The declarations allege that the Defendant, The Nashville Gas Company, after making an inspection of the house, knew, or by the exercise of ordinary care, should have known, that the closet space wherein the heater was to be installed, did not have an adequate supply of oxygen; and that this Defendant, by the exercise of ordinary care, knew, or should have known, that the installation of a gas water heater in the closet would create a hazardous condition which would endanger the lives and property

of the occupants of the house; and that said Defendant owed the occupants a duty to refrain from creating such a hazardous condition; and that the act of this Defendant in installing the gas heater, was a negligent act, and that its negligence was a proximate and contributing cause of the damages suffered by the Plaintiffs.

The declarations allege that the Defendant, The Nashville Gas Company, after making an inspection of the house, knew, or by the exercise of ordinary care, should have known, that the space wherein the water heater was installed, had an insufficient supply of oxygen; that in spite of this knowledge, the Defendant Gas Company connected the pipes of the house with its regular gas line and supplied gas under a contract; that on several occasions, agents of the Gas Company made service calls and became acquainted with the dangerous condition; that at no time, did the Defendant warn the plaintiffs of the danger rising from the location of the water heater; and that the acts of the Gas Company in supplying Plaintiffs' house with gas with full knowledge of the dangerous installation, and in failing to inform Plaintiffs of the danger, were negligent acts, and that such negligent acts were a proximate and contributing cause of the damages suffered by the Plaintiffs.

The three declarations differ only as to the nature of the damages sought to be recovered. John Evens seeks to recover damages for several items of personal property owned by him and destroyed by the fire following the explosion; Mrs. Evens seeks to recover for loss of several items of personal property belonging to her and so destroyed; and the Plaintiffs jointly sue to recover damages to the house which they own as tenants by the entirety.

To each of the declarations, each of the Defendants filed a separate demurrer, nine in all, and these demurrers

being sustained by the Trial Judge, the Plaintiffs have perfected this appeal.

In our consideration of this interesting case, the Court has been greatly aided by the able, relevant and carefully prepared briefs filed by the Plaintiffs and all three of the Defendants.

We will first consider the propriety of the action of the Trial Judge in sustaining the demurrer of the Defendant, Walter C. Young. The grounds of that demurrer were that (1) as builder and vendor, Young owed no duty to the Plaintiffs to exercise due care for their safety in the construction of the house sold them, (2) that as builder and vendor, he owed no duty to Plaintiffs to inform them of any known defects or hazards in the house at the time of the sale, and (3) that all of the acts of negligence with which he is charged in the declarations occurred while he, himself, owned the house, and prior to the time that the house was sold to the Plaintiffs.

The question of Young's liability is conclusively determined by the rules of Tennessee law laid down in the case of *Smith* v. *Tucker,* 151 Tenn. 347, 270 S. W. 66, 41 A. L. R. 830. That case was one of first impression, not only in this jurisdiction, but also throughout the United States. Since the delivery of the opinion, it has been frequently cited and followed.

In the Tucker case, Plaintiff had purchased a home in Memphis, from the Defendant, the builder, who had employed certain contractors and sub-contractors as Young had done in the present case. Plaintiffs moved into the property about November 1, 1920, taking a warranty deed. The house was new, and the construction had just been completed. After the property had been occupied a week or two, it was found that the mantel was in an

unsafe condition, and the vendor was notified of that fact, and undertook to repair the mantel. After the attempted repair, the vendor reassured the vendees that the premises were safe, and that the mantel had been repaired. Very shortly after that assurance, the mantel, a heavy stone slab, fell on Plaintiff's two-and-one-half-year-old child, killing him.

In the Trial Court, at the end of Plaintiff's proof, a motion for peremptory instruction was sustained; the Court of Civil Appeals affirmed. Although this Court found (opinion 151 Tenn. at page 358, 270 S. W. 66) that there is no doubt as to the negligent and improper construction of the mantel, this Court, nevertheless, considered that the rule of caveat emptor applied to this sale of real estate; that the vendor was not required to disclose dangerous conditions of the premises to the vendee; and was not liable to the vendee for injuries sustained on account of the fall of the defective mantel.

From the opinion in the Tucker case, we infer that the statements and allegations of negligence in the declaration in that case were similar, if not identical, with the allegations of negligence in the present case, and the relation of the parties were identical.

The Plaintiff in the Tucker case, undertook to invoke the rules of liability applicable to the relation of landlord and tenant as they have been laid down by this Court in the "Willcox cases," *Stenberg* v. *Willcox,* 96 Tenn. 163, 33 S. W. 917, 34 L. R. A. 615, and *Willcox* v. *Hines,* 100 Tenn. 524, 45 S. W. 781. This effect was unsuccessful and this Court rejected the attempt to apply the rule of liability of landlord and tenant, and refused to apply it to the relation of vendor and purchaser of real estate. In deciding against the liability of the vendor, this Court

said in the Tucker case, 151 Tenn. at page 362, 270 S. W. at page 70:

"Whatever may be the reason, no case can be found in the books where the vendor has been held liable in damages to the vendee, or to third persons, for personal injuries arising from defects in the premises.

"Whether this be on grounds of public policy, or because the rule of caveat emptor governs, and no warranty will be implied (Williston on Contracts, vol. 2, Sec. 926), or whether it be because the precedent negotiations are supplanted by the deed when the vendee receives it (27 R. C. L. 529), or whether the reason is to be found in the fact that the delivery of the deed practically terminates the relation of vendor and purchaser, whereas the relation of landlord and tenant is a continuing one, or whether such damages are not supposed to be within the reasonable contemplation of the parties—whatever be the reason, the fact remains." *Smith* v. *Tucker,* 151 Tenn. 349, 362, 270 S. W. 66, 70.

In 1927, in a case where the facts were substantially identical with those before us here, the Court of Appeals followed the rule of the Tucker case, and said in the course of the opinion:

"The court holds that the vendor does not owe to the purchaser the duty to disclose to him dangerous conditions of premises. That the same rule does not apply between vendor and vendee as between landlord and tenant. The opinion is elaborate and exhaustive. It covers this case with a margin to spare. Unless the plaintiff in the instant case can prevail upon the Supreme Court to overrule the

*Smith* v. *Tucker* case, we see no hope for him to succeed. Therefore it seems unnecessary to encumber this opinion with further citation of authority. In fact that case seems to go so far as to say that even proof of actual knowledge on the part of the defendant of defects in the house would not have rendered him liable.'' *Ropeke* v. *Palmer,* 6 Tenn. App. 348, 353-354.

 Plaintiffs undertake to hold Young liable to them as an architect, and cite cases in which architects have been held liable for approving dangerous construction of buildings. We think these cases have no application here. Young's function as an architect was not performed under any contract with the Plaintiffs, and that function had been exercised and completed before the Plaintiffs, as purchasers of the property, entered the picture. The Plaintiffs also seek to have us modify the rules stated in the Tucker case, supra, and hold that there was an implied warranty, citing for this contention, cases involving manufacturers of chattels. This same contention was made and rejected in the case of *Mercer* v. *Meinel,* 290 Ill. 395, 125 N. E. 288, 8 A. L. R. 351. We find no merit in this attempted analogy. Here the Plaintiffs, so far as their declarations disclose, had inspected the premises when they bought it. Nothing was done by Young on the premises after the house had been bought. The Plaintiffs had used the gas heater and paid the gas bills for almost three years before the explosion occurred. Young had no knowledge of the defective condition of the premises which the Plaintiffs did not have, or could not reasonably have acquired. The action of the Trial Court in sustaining the demurrer of Young is affirmed.

We next consider the three grounds of the demurrer of the Defendant, The Central Equipment and Supply Com-

pany, namely:—(1) That as supplier and vendor to Young, the builder of the house, the Supply Company owed no duty to the Plaintiffs to exercise due care in the construction of the house; (2) that the declarations alleged no facts upon which liability of the Defendant to the Plaintiffs, could be predicated; (3) that the declarations allege no privity of contract between the Defendant and the Plaintiffs, and (4) that all acts of alleged negligence occurred prior to the time Plaintiffs acquired the premises and took possession of the house.

The question of liability for negligence cannot arise at all until it is established that the man who has been negligent, owed some duty to the person who seeks to make him liable for his negligence. Prosser on Torts, p. 179; Winfield, The Law of Torts, 5th ed., pp. 409, 410.

In these cases the Supply Company installed the gas water heater in the space prepared by the owner, contractor, Young, and so far as these declarations disclose, in all respects, satisfactorily, under the contract with Young. No defect in the heater is alleged and Plaintiffs had used the heater without mishap for almost three years before the explosion. We agree with counsel for the Supply Company that the liability of the Company is controlled by the rules stated in *Hester* v. *Hubbach,* 26 Tenn. App. 246, 170 S. W. (2d) 922. In the Hester case, Plaintiffs sought damages for personal injuries sustained when a piece of structural glass fell from a store front and struck her as she was passing on the street. The Hubbuch Glass Company was the subcontractor who had installed the glass in the store front. The tenant of the building and the owner of the building were also made parties Defendant. In holding that Hubbuch, the subcontractor, was not liable, and approving a jury verdict to the effect, the Court said:

"Hubbach's testimony tended to show the front was installed by him in the way and manner provided by contract between the general contractor and the lessee, and was accepted by them nearly five years prior to the accident. Clearly, there was evidence to support the jury's verdict." *Hester* v. *Hubbuch,* 26 Tenn. App. 246, 254, 170 S. W. (2d) 922, 925.

To support this finding the Court of Appeals cited 27 Am. Jur., Independent Contractor, Sec. 55, pp. 534-535.

" 'The general rule is well established that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner or employer and it has been accepted by him, even though the injury results from the contractor's failure properly to carry out his contract.' "

*Hester* v. *Hubbuch,* supra, is cited in 13 A. L. R. (2d) 201, with many other cases from U. S. Courts, as supporting the general rule of non-liability of the sub-contractor in cases substantially identical with that before us here. Under these authorities, we hold that the demurrer of the Supply Company was properly sustained by the Trial Court.

We will now consider the sufficiency of the demurrer of the Nashville Gas Company. The grounds of that demurrer were briefly: (1) That no cause of action was stated in the declarations against the Gas Company; (2) That the declarations alleged no facts upon which liability could be predicated against the Gas Company; and (3) That no privity of contract and no actionable negligence were alleged in the declarations as to the Gas Company.

It is alleged in the declarations that prior to the purchase by the Plaintiffs on April 2, 1949, the Gas Com-

pany had inspected the gas installation in the house and connected the pipes installed in the house with its regular lines. This was done while Young was the owner of the house. After April 2, 1949, it is alleged that the Gas Company supplied the Plaintiffs with gas, and that during this time a servant of the Gas Company was acquainted with the location of the heater. As the exact language of these allegations is important, we quote verbatim from the declarations:

"At various times during this period servants of the defendant made service calls at the house of the plaintiff and on several occasions became reacquainted with the inherently dangerous condition about the water heater, but on all occasions failed to warn the plaintiff of the danger. Because of the contractural relations between the parties, the defendant Nashville Gas Company owed to the plaintiff the duty of warning him of any dangerous condition concerning the gas installations, of refraining from either connecting the pipes or from supplying gas upon gaining knowledge of said dangerous condition, and of making a proper inspection of the gas installations prior to turning on the gas."

The words "service calls" are very general and indefinite, and may mean no more than calls made to read the meter; and the allegation that the condition was "inherently dangerous" is rebutted by the acknowledged fact that the heater was used from April 2, 1949, to January 4, 1952, with no trouble whatever. We are bound by the facts stated, that the heater was in use from 1949 to 1952, but we are not bound by the pleader's conclusion, that the condition was "inherently dangerous." *Hackney Co.* v. *Robert E. Lee Hotel,* 156 Tenn. 243, 300 S. W. 1; *Heiskell* v. *Knox County,* 132 Tenn. 180, 177 S. W. 483.

█ In any event, the importance of these allegations depends on whether, with the only contract here, that of furnishing and paying for gas, the Gas Company was under any duty to warn the Plaintiffs of a danger which did not rise from leaks or defects in the lines of the Gas Company, but arose from an alleged defective installation which had been made by the Central Equipment and Supply Company, under a contract with Young, before the premises were bought by the Plaintiffs.

Under our cases, as well as under general law, we think the Gas Company owed the Plaintiffs no such duty.

█ The Gas Company is not an insurer, but is liable only for the failure to exercise the high degree of care commensurate with the danger of its product. *Cleveland Gas Co.* v. *Woolen,* 30 Tenn. App. 282, 287, 205 S. W. (2d) 754; *Nashville Gas & Heating Co.* v. *Phillips,* 17 Tenn. App. 648, 665, 69 S. W. (2d) 914.

█ Where the injury occurred as the result of gas escaping from defective pipes or appliances, *owned by the consumer,* the burden is on the Plaintiff to show that there was a defective condition, *for the repair of which the Company was responsible.* *Conway* v. *Philadelphia Gas Works,* 336 Pa. 11, 7 A. (2d) 326. Plaintiffs rely on the case of *Cleveland Gas Co.* v. *Woolen,* supra, but we think that the facts of that case and the situation of the parties there, furnished the very elements of liability which are lacking in the present case. The explosion in that case rose from an old gas heater, because it had no automatic cut-off. After there had been a failure of gas supply in Cleveland for some hours, and Mrs. Woolen found it out because she could get no hot water, she called the Cleveland Gas Company by telephone, told them of the situation, and they agreed to send a man to see about the

gas supply. Although the office of the Gas Company was only 6 blocks from Mrs. Woolen's home, the Gas Company did not send any one for some hours, and it was when the employee of the Gas Company was making an inspection in the basement that the explosion occurred. The Gas Company had installed the old heater and so knew its limitations and dangers of its use. The jury was also warranted in concluding that the employee of the Gas Company had caused the explosion by striking a match. The Gas Company had actual knowledge of the dangerous accumulation of gas, and also actual knowledge of the defective condition of the gas heater which the Gas Company, itself, had installed. These facts clearly distinguish the case of *Cleveland Gas Co.* v. *Woolen,* supra, from the facts in the present case.

In our view, the present case is more nearly controlled by *Nashville Gas & Heating Co.* v. *Phillips,* supra, where liability was denied, since the heater had been in service in the present case, for three years without mishap, and the Gas Company had no actual knowledge of the abnormal accumulation of gas on January 4, 1952.

▮▮▮ Under these authorities, we conclude that the demurrer of the Gas Company was properly sustained.

All assignments of error are overruled, and the three judgments are affirmed at the cost of the Plaintiffs in Error.